J. W. MUNSON ET AL. V. B. F. LOONEY, ATTORNEY-GENERAL.

No. 2665.   Decided January 27, 1915, June 26, 1915. ·

**1.—Road and Drainage Districts—Creation of Debt—Constitution.**

Under article 3, section 52, of the Constitution, districts created in any county for drainage purposes and road districts (Rev. Stats., 1911, art. 2595) may each embrace the whole or a part of the other so created and issue bonds for their respective purposes, but the aggregate indebtedness so created must not exceed one-fourth of the assessed valuation of real property for any portion of the territory embraced in either.   Simmons v. Lightfoot, 105 Texas, 212, followed.   (P. 268.)

**2.—Same—Case Stated.**

A road district created in accordance with law in Brazoria County embraced territory lying wholly or in part in two drainage districts theretofore lawfully created and which had issued bonds in the respective amounts of 22 per cent and 21.2 per cent of the assessed value of the real estate within their limits. An issue of bonds by the later created road district was presented for approval which would have resulted in charging an aggregate indebtedness for drainage and for road purposes exceeding one-fourth of the assessed value of their real estate upon portions of the territory embraced in both the road and the drainage districts.   Held, that this indebtedness exceeded the limits permitted by the Constitution, and the Attorney-General properly refused to approve the issuance of the bonds.   (Pp. 266-268.)

ON MOTION FOR REHEARING.

**3.—Concurring Opinion—Case Criticised.**

Concurring in the refusal of writ of mandamus, Mr. Justice Hawkins criticises the opinion and ruling in Simmons v. Lightfoot, 105 Texas, 212, as inconsistent, and as announcing a rule by which indebtedness exceeding one-fourth of the assessed value of real property in a part of a road or drainage district might be and was thereby illegally created (Const., art. 3, sec. 52) or the constitutional requirement of uniformity of taxation (Const., art. 8, sec. 1) disregarded.   (Pp. 269-280.)

Original application to the Supreme Court for writ of mandamus requiring Mr. B. F. Looney, as Attorney-General, to approve certain bonds of a road district in Brazoria County proposed to be issued by the relators.   The action was brought by Munson, County Judge, joined by the county commissioners of Brazoria County and by the road commissioners of Road District No. 5, issuing the proposed bonds.

*C. D. Jessup* and *Hart & Woodward,* for relators.—So far as we have been able to ascertain the precise question presented by this record has not been judicially passed upon by any of the ·courts of the country except in the case of Simmons v. Lightfoot.

There are countless authorities sustaining the creation of districts of this character. .There are many authorities which support the proposition that such districts may be overlapping, and we respectfully submit that question is no longer open in this State.

The language of most cases as to equality and uniformity of taxation within districts of this character is that such taxes must be equal and uniform throughout the taxing district.    Taken abstractly, such language would require that as to all property situated within the district taxation must be at the same rate and upon the same proportion of value.    If such be in fact the rule, then that portion of the opinion in the Simmons case which authorizes the collection from common territory of bonds less than proportionate to the value of such territory is unsound, and the bonds tendered for approval in this case, having been issued under the authority and upon the same conditions as existed in the Simmons case, can not be lawfully approved for the full amount thereof.

But we submit that in a situation such as is presented by the record in this case, a different standard may be applied.    But for the concurrence of two-thirds of the resident taxpaying voters the district would not have been organized.    Such a majority has voted to created the district in spite of "conditions as they exist," and having formed it the matters of its management are committed under the special road law of Brazoria County to trustees chosen by the voters of such district for that purpose.    Such trustees are among the relators in this suit.

Under the authority of the Simmons-Lightfoot case, these bonds have been voted and if that decision is sustained it follows that the respondent must be required by order of this court to certify his approval of them. It must be conceded that, unless personal property can be considered for purposes of taxation, in this particular instance three different rates of taxation will be in force within the limits of Road District No. 5 for the purpose of providing interest and sinking fund for this single issue of bonds.    No other conclusion can be arrived at and unless such a course is authorized in districts of this character the relief prayed for by relators should be denied.

But it by no means follows that the authorization of these bonds to be provided for by taxes distributed as above suggested will result in an absence of equality and uniformity in taxation if it is competent for the court to consider the manner in which the proceeds of such bonds will be managed and disbursed.    It is perfectly possible, of course, that the trustees of Road District No. 5, if the bonds in question are authorized and disposed of, will so disburse the proceeds thereof as to return to the taxpayers as nearly as may be the benefits of the contemplated improvement in proportion to their contribution to its cost.    Indeed, in view of

the purely local character of the control of the entire situation the probabilities are very great that such a course would undoubtedly be followed. If it is, no complaint could be urged by any taxpayer to the burden imposed upon him by virtue of this bond issue.

It is also perfectly possible, of course, that such trustees might so disburse the proceeds of such bonds as to work great hardship and injustice upon the taxpayers in certain portions of the district, but it must be equally evident that such a result might also occur if the bonds were raised by proportionate taxation.

It has been earnestly urged by respondent in this case that the levy of the taxes in the manner above indicated and as authorized by the Simmons case is repugnant to article 8, section 1, of the Constitution of the State of Texas, providing that taxation shall be equal and uniform. In reply we can only say that that provision of the Constitution was in effect when the decision in the Simmons case was announced, and that our very diligent search of all authorities available has failed to disclose any other case authorizing the method of taxation directed and required by the Simmons case.

*B. F. Looney,* Attorney General, and *W. M. Harris* and *Luther Nickels,* Assistants, for respondent.—The requirements of equality and uniformity of taxation control the tax that must be levied to take care of the interest and sinking fund of the bonds. Texas Constitution, Bill of Rights, sec. 3; Id., art. 1, sec. 8; Ex Parte Jones, 38 Texas Cr., 482, 43 S. W., 513; Ex Parte Woods, 108 S. W., 1191; Lively v. Missouri, K. & T. Ry. Co., 102 Texas, 545; Const. U. S., 14th Amendment, sec. 1; Williams v. Supervisors, 122 U. S., 154; Railway Co. v. Powers, 201 U. S., 245; Railroad Tax Cases, 92 U. S., 575; Railroad Tax Cases, 115 U. S., 321; Railway Co. v. Wright, 151 U. S., 470; Railway Co. v. Backus, 154 U. S., 421; Railway Co. v. Reynolds, 183 U. S., 471; Coulter v. Railway Co., 196 U. S., 599; 37 Cyc., 736, and cases cited in note 17; Norris v. City of Waco, 57 Texas, 635; City of Austin v. Austin Gas Co., 69 Texas, 180.

It has been expressly held by our courts that the taxes levied by drainage districts to take care of the interest and sinking fund on bonds issued under the provisions of section 52 of article 3 of the Constitution and the drainage statute enacted thereunder are not in any sense "special assessments" but are ordinary taxation, to which the restrictions of the Constitution as to equality, etc., apply. Harris Co. Drainage Dist. v. Parker, 148 S. W., 351; Wharton Co. Drainage Dist. v. Higby, 149 S. W., 385.

In order for taxes to be "equal and uniform," as required by the Constitution, two things are absolutely necessary: (1) Tax on two similar kinds of property must be equal and uniform. (2) The assessment and taxation must be equal and uniform throughout the taxing district. Mills County v. Brown County, 85 Texas, 393; Norris v. City of Waco, 57 Texas, 635; M. K. & T. Ry. Co. v. Shannon, 100 Texas,

379; Adair v. Robinson, 6 Texas Civ. App., 277; Cummings v. Natl. Bank, 101 U. S., 158; Fletcher v. Oliver, 25 Ark., 289; Wilson v. Sutter County, 47 Calif., 91; People v. Whyler, 41 Calif., 355; Bright v. McCullough, 27 Ind., 223, reaffirmed and approved in Gilson v. Comrs., 27 N. E., 235; Railroad Co. v. Geiger, 34 Ind., 185; Loftin v. Bank, 85 Ind., 345; Wasson v. Comrs., 49 Ohio St., 622; Fields v. Comrs., 36 Ohio St., 476; Knowlton v. Supervisors, 9 Wis., 410; Hutchinson v. Land Co., 57 Ark., 554, 22 S. W., 173; City of Seattle v. County Comrs., 3 Wash., 154, 28 Pac., 376; Miller v. County Comrs., 69 Atl., 118; French v. Town of Lyme, 86 Atl., 823; People v. Railway Co., 93 N. E., 298; Yamhill v. Foster, 99 Pac., 286; Day v. Roberts, 101 Va., 248, 43 S. E., 362; State v. Meeker, 105 N. E., 906; Merrell v. City of St. Petersburg, 60 So., 349; Dental Mfg. Co. v. Commonwealth, 98 N. E., 1056; King v. Sullivan Co. (Tenn.), 160 S. W., 847.

Mr. Chief Justice BROWN delivered the opinion of the court.

This is a proceeding by the relators against the Attorney-General to require him to approve an issue of $50,000 of bonds made by the County of Brazoria under the following state of facts:

By a proper proceeding under the law of the State and in accordance with the Constitution of the State, Brazoria County created a road district No. 5, and by a vote of the citizens of said district, provided for the issue of $50,000 of bonds upon the property of the said district. The bonds were issued and presented to the Attorney-General for approval, which was declined.

The road district No. 5 included all or a part of drainage districts Nos. 5 and 8 in the said county. The drainage districts had been previously created and bonds issued to the amount of 22 per cent of the taxable values of the real estate of drainage district No. 5, and of 21.2 per cent of the taxable values of the real estate of district No. 8. If the $50,000 in bonds had been approved by the Attorney-General, it would have increased the bonded indebtedness of district No. 5 and district No. 8, each, to an amount greater than 25 per cent of the assessed value of the real estate in each.

As before stated, this is a proceeding in which it is sought to have a mandamus issued to the Attorney-General, requiring him to approve said bonds, and the question that is presented here for examination and determination is: Would the approval of the $50,000 in bonds increase the amount of the bonds on the two drainage districts, or either of them, to an amount greater than the constitutional limitation?

Counsel for both parties have discussed many questions in this case, which, in the opinion of the court, are wholly irrelevant to the real issue, which is, to our minds, very simple. We will first endeavor to strip this case of all of its complications and misleading propositions, so as to make clear and unquestionable the proper course to be pursued in issuing such bonds.

The opinion in the case of Simmons v. Lightfoot, 105 Texas, 212, 146

S. W., 871, seems to be wholly misunderstood and misinterpreted by the
attorneys on both sides of this contention. Indeed, from some cause
or other, the misunderstanding of that case seems to have caused the
only difficulty in this case.

We will first outline that which might have been done in compliance
with the Constitution.

Article 3, section 52, of our Constitution denies to the Legislature
the power to authorize any city, town, or county, or any subdivision in
the State to lend its credit, etc., "provided, however, that under legis-
lative provisions any county, . . . ; upon a vote of two-thirds ma-
jority of the resident taxpayers voting thereon who are qualified electors
of such district or territory to be affected thereby, in addition to all other
debts, may issue bonds or otherwise lend its credit in any amount not
to exceed one-fourth of the assessed valuation of the real property of
such district or territory, . . . , and levy and collect such taxes to
pay the interest thereon and provide a sinking fund for the redemption
thereof, as the Legislature may authorize, and in such manner as it may
authorize the same, for the following purposes, to-wit:

.     .     .     .     .     .     .     .     .     .     .     .     .

"(b)   The construction and maintenance of pools, lakes, reservoirs,
dams, canals and waterways for the purposes of irrigation, drainage or
navigation, or in aid thereof.

"(c)   The construction, maintenance and operation of macadamized,
graveled or paved roads and turnpikes or in aid thereof.

"(Declared adopted December 29, 1904.)"

In exercise of the authority granted, the Legislature enacted a statute
containing these provisions:

"Art. 2595.   *Drainage bonds; order for issuance; amount.*—After
the establishment of any such drainage district and after the making
and filing of such maps, profiles and estimates as provided for in section
22 of this Act (Article 2593), the Commissioners' Court shall make
an order directing the issuance of drainage bonds for such district,
sufficient in amount to pay for such proposed improvements together
with all necessary actual and incidental expenses connected therewith;
provided, however, that said bonds shall not exceed in amount one-
fourth of the assessed valuation of the real property in such district, as
shown by the last annual assessment thereof made for said drainage
district, nor exceeding the amounts specified in said order and notice
of election."

Under that law, drainage districts Nos. 5 and 8 in Brazoria County
were created. District No. 5 issued bonds to the amount of 22 per cent
of the assessed value of the real estate within its limits. District No.
8 was created in said county, and adjoining No. 5, which issued bonds
to the amount of 21.2 per cent of the assessed value of all real estate
within said district. If the bonds now sought by this procedure were
issued by either the fifth or the eighth district, it would result in charging

upon such district a sum greater than one-fourth of the assessed value of the real estate therein, in violation of the Constitution.

If the bonds presented had been approved by the Attorney-General, it would have appropriated to the payment of bonds more than one-fourth of the assessed value of the real estate in each of the districts named, in direct violation of the Constitution of the State. This question was so ably and carefully discussed in Simmons v. Lightfoot, Attorney-General, 105 Texas, 212, 146 S. W., 871, that we deem it unnecessary to repeat conclusions reached and expressed in that case, further than to quote as follows:

"No good reason presents itself to us why the formation of one district for the purpose of promoting one of the five enterprises sanctioned by the Constitution and laws of the State should preclude the formation of another district for a different purpose sanctioned by the same authority, embracing a portion or all of such antecedent district. A defined district in need of drainage might equally be in need of good roads, and the same exigency might be urged in relation to each of the purposes for which such districts may be formed. To hold that the formation of one district for a single purpose would deny the use of any part of such district for any other purpose would deny effectiveness to the Constitution and the legislative acts pursuant thereto.

"One district may embrace a part or the whole of another, or be so formed as to adopt the exact territory with the same metes and bounds and, being for a different purpose, is a distinct unit or entity, with power to exercise the functions of its creation. Allman v. Lumsden et al. Drainage Comrs., 55 Ill. App., 21; People ex rel. Robert T. Miller v. Scott, 132 Ill., 427, 23 N. E., 1119.

"While it is true we have held as herein stated that two or more districts for different purposes may embrace the same territory and remain separate and distinct units or entities, yet from this it does not result that the real property the subject of taxation is distinct in such districts so formed. The taxable property remains the same while administered over by separate and distinct entities, and their joint authority to create a debt against this property is limited by the Constitution to the aggregate amount of one-fourth of the assessed value of such property. This seems to us to be the plain and undoubted language of the section of the Constitution under consideration. To give the section a different construction might lead to injurious results and such as we feel sure were never contemplated by those who proposed the amendment to the Constitution by legislative resolution, or who adopted it by exercise of the ballot's sovereignty."

That clear and forcible statement of the law which confers the power to issue such bonds, and the limitation upon its exercise is so clear, that the writer can not improve upon it, and we adopt it as quoted herein.

The Attorney-General properly refused to approve the bonds. The writ of mandamus is refused.

Mr. Justice HAWKINS delivered the following opinion in concurring with the court in overruling a motion of relators for a rehearing:

Upon the original hearing, this court said:

"This question was so ably and carefully discussed in Simmons v. Lightfoot, Attorney-General, 105 Texas, 212, 146 S. W., 871, that we deem it unnecessary to repeat conclusions reached and expressed in that case, further than to quote as follows," the quotation embracing what will be hereinafter referred to as a correct interpretation, *in abstract terms,* of section 52 of article 3 of the Constitution of Texas.

For the quotation in full, see the opinion of this court in the case at bar, 172 S. W., 1102.

Upon careful consideration of relators' motion for a rehearing herein, in connection with all that was said in said original opinion in this case concerning the opinion of this court in the Simmons case, I feel constrained to express here my views as to the bearing of said opinion in that former case upon the case at bar, lest I be longer misunderstood as approving the decision and the *entire* opinion in the Simmons case.

Said opinion in the present case also declared:

"The opinion in the case of Simmons v. Lightfoot, 105 Texas, 212, seems to be wholly misunderstood and misinterpreted by the attorneys on both sides of this contention. Indeed, from some cause or other, the misunderstanding of that case seems to have caused the only difficulty in this case."

I now feel impelled to say that I no longer concur in that expression. In fact, further study of the subject has convinced me that said attorneys understand said opinion in the Simmons case substantially as I do, and that the real difficulty in this case grows out of serious errors and marked inconsistency in that opinion in the Simmons case itself, and results from the fact that in the case at bar respondent asserts the correctness of one phase of said opinion in the former case, while relators rely upon another and conflicting phase of it.

In Simmons v. Lightfoot, this court, in *abstract terms,* correctly construed section 52 of article 3 of our State Constitution, but a conflicting method of determining what amount of bonds might be issued by the road district was applied to the facts.

That resulted, in that former case, in the award of a writ of mandamus to compel approval of an excessive bond issue. And the basis therein suggested and approved for assessment and collection of taxes is one inhibited by section 1 of article 8 of said Constitution.

The foregoing outlines this situation as I understand it; however, a fuller statement of my views of that case appears to be reasonably demanded, and may prove worth while.

Simmons v. Lightfoot, *supra.* was a pioneer case, and imposed upon this court the dual duty of construing and applying section 52 of article 3. Those constitutional provisions were construed and held to contemplate the establishment of a road district embracing all or part of a

previously formed drainage district; and in *abstract terms*, they were further construed, substantially, as authorizing statutes providing for the creation of an aggregate bonded indebtedness not exceeding one-fourth of the assessed valuation of real property of any district, for all five, but not for *each*, of the general purposes en: merated in section 52; and, to that extent, that opinion was clear, forcible and correct. Indeed, to that extent, it was unanswerable, and well entitled to be followed, as it was followed, by this court, in deciding the case at bar. But it will be observed that said original opinion herein does not quote, or approve, or discuss, or mention any other plan or rule for ascertaining what amount of bonds any district may issue, or on what basis taxes therefor shall be assessed and collected.

However, the fundamental principle which was enunciated, abstractly, in the Simmons case, as embodying the correct interpretation of said restrictive constitutional provisions, did not control the decision in that former case. In Simmons v. Lightfoot, *supra*, it was also said:

"We are of opinion that a road district formed after a drainage district may embrace such district and may create a debt *not to exceed one-fourth of the assessed value of the real property in such subsequently formed district, less the debt created by the previously formed district.*" (Italics mine.)

And that italicized *practical* rule was permitted to actually control that decision—the logical and immediate result being that this court there ordered the Attorney-General to approve certain road bonds of such great aggregate amount that the share or portion thereof for which the territory common to both districts would become charged, proportionately, would, when added to the amount of said drainage bonds then outstanding make up a total bonded indebtedness proportionately chargeable against that common territory largely in excess of one-fourth of the assessed valuation of real property with that common territory; and that, in my opinion, was in plain and direct contravention of said restrictive provisions of section 52, as construed and practically applied to the facts of the case at bar, in said opinion by Chief Justice Brown, and as likewise construed in *abstract terms*, but *not applied*, in said opinion in the Simmons case.

It *is* significant, perhaps, that in immediate connection with the enunciation of said practical rule in the Simmons case the court added: "But in levying and collecting the taxes to pay the interest on and provide a sinking fund for the payment of such debt, the property in the previously formed district *can not be taxed more than sufficient to pay the amount in excess of the debt the drainage district was authorized to incur.*" (Italics mine.)

That propostion appears to have been there advanced as *a predicate for said practical rule*—and I think such predicate was indispensable to, as well as insufficient for, its support; yet the proposition itself seems to me to be absolutely repugnant to section 1 of article 8 of the Constitution of Texas, which declares that "taxation shall be equal and uniform."

Those provisions of section 1 apply to each and every district within the purview of said section 52, including drainage districts and road districts. City of Austin v. Austin Gas, L. & C. Co., 69 Texas, 180, 7 S. W., 200; Norris v. City of Waco, 57 Texas, 641; Mills County v. Brown County, 85 Texas, 393, 20 S. W., 81; Missouri, K. & T. Ry. Co. v. Shannon, 100 Texas, 379, 100 S. W., 138, 10 L. R. A. (N. S.), 681. Said provisions are not mentioned in that opinion in the Simmons case, and appear to have been entirely overlooked. And, in logical and ultimate effect, that enunciation of said provision in that former case directed the assessment and collection of road bond taxes in that road district upon a basis which might result in a road bond tax rate within the territory common to both districts *lower* than the road bond tax rate applicable throughout the other portion of that road district—in contravention of said section 1 of article 8. That would be the inevitable result upon the basis of the assessed valuation of real property within the two districts, respectively; and that is the only constitutional or statutory basis for determining the extent, or amount, of such bond issues.

Now, it is upon that practical rule, so based upon or reinforced, or supplemented, by said proposition concerning levy and collection of taxes, that relators stand, in the case at bar; from which I assume that said practical rule and said proposition were considered by relators as a safe and sufficient guide in preparation and issuance of the road bonds here in controversy.

The refusal of respondent to observe and follow that rule, in approving bonds, evidently precipitated this suit for mandamus. Consequently, said practical rule and said proposition together form the very warp, at least, of the case at bar, and are so interwoven into its texture that the pending issues between the parties can hardly be fully or satisfactorily decided without consideration of *both phases* or *branches* of said opinion in Simmons v. Lightfoot, *supra;* and, inasmuch as they are inconsistent, and one or the other, is, therefore, necessarily erroneous, I consider it both appropriate and timely for this court to here and now draw between them a definite line of demarkation, and say plainly, not only that it adheres to the one, but that it expressly overrules the other. Why not?

Consequently, the sole remaining inquiry is: Is there really an irreconcilable conflict between said practical rule and said section 52 *properly construed?*

As illustrative tests of that rule let it be applied, first, to the facts of an assumed case, in simplest form; second, to the facts of the Simmons Case; and, third, to the facts of the case at bar.

PLAT ILLUSTRATING ASSUMED CASE.

A, B, C, D.=Drainage District.

Assessed valuation real property......................... $100,000.00

Normal bond capacity (¼).............................. 25,000.00
Drainage bonds issued................................. 15,000.00

Reserve bond capacity................................. $ 10,000.00

E, F, G, D.=Road District.

Assessed valuation real property......................... $400,000.00

Normal bond capacity (¼)............................. $100,000.00
Road bonds issued..................................... None.

In the assumed case, let the road district comprise four sections numbered 1, 2, 3 and 4, respectively, the assessed valuation of real property, in each, amounting to $100,000, section 4 comprising a previously formed drainage district which has issued drainage bonds amounting to $15,000. The assessed valuation of real property in the entire road district, including the common territory, is, therefore, $400,000, and one-fourth thereof, representing the normal bond issue capacity of the entire territory within the road district for all or any of the purposes mentioned in said section 52 is $100,000. Applying, now, said practical rule: Deducting from that amount the amount of outstanding drainage bonds, $15,000, previously issued by said drainage district against its territory, which has now become common to both districts, the residue, $85,000, is found to be the maximum amount of road bonds which said road district may actually issue *according to that rule.*

Now, it must be conceded that, upon the foregoing assumption that the assessed value of real property is uniform throughout the four sections

comprising said assumed road district, said issue of $85,000 in road bonds against the entire road district, may truthfully be said to amount, *from a merely mathematical standpoint,* to an issue of only $25,000 in road bonds against each of said sections 1, 2, and 3, and of only $10,000 against said section 4, comprising said previously organized drainage district, and that in said drainage district, the $10,000 in road bonds, when added to said $15,000 in drainage bonds, would make up for said section 4 a like total of only $25,000 in bonds, and that, *upon that theory,* each of the four sections comprising said road district would stand bonded for only $25,000, which would not exceed the restriction imposed by said article 3, section 52 of the Constitution; wherefore, the alleged conflict with section 52 vanishes.

But the problem involves more than mathematics. And the entire and only course of reasoning upon which said road bond issue of $85,000 can be considered valid—as not conflicting with said provisions of section 52—rests upon said *assumption* that in estimating the total capacity of the road district to issue road bonds said $85,000 in road bonds may be considered or treated, *legally,* as distributed among, over, and upon said four sections in manner and in proportions above suggested, and upon the *further assumption* that property within said drainage district is to be taxed for interest and sinking fund *for only $10,000* of said $85,000 issue of road bonds. But both of those indispensable assumptions are, in my opinion, alluringly yet certainly and utterly fallacious; nevertheless, they seem to have entered into and to have materially affected and to have even controlled the actual disposition of the case in Simmons v. Lightfoot; and I think they probably explain the genesis of said practical rule therein formulated for ascertaining what amount of valid bonds may be issued.

To indulge said first assumption,—to consider or treat such road bond issue of $85,000 as so distributed to, over, or against said sections 1, 2, 3 and 4, *not in proportion to the assessed valuation of real property* (which in the assumed instance would mean equally), but arbitrarily, in the manner and form herein above shown, making the portion thereof chargeable against each of sections 1, 2 and 3 two and one-half times as great as the portion chargeable against section 4, although the assessed valuation of real property is the same in each section, is, I think, to disregard the plain intent and meaning of said section 52 and of said road district statute; and, to undertake to justify that procedure by making the road bond tax rate within the common territory *less than that required in the other portion of the road district,* is, I think, to lose sight of and ignore said simple yet searching constitutional provision that "taxation shall be equal and uniform."

Our Constitution and statutes and natural justice are such that, if the validity of said $85,000 road bond issue be once assumed, or granted, each of said sections must, thenceforth, be considered and treated as charged with its proportional one-fourth thereof, or $21,250; and that

sum, when added to the amount of said outstanding drainage bonds, would run the total amount of such bonded indebtedness so chargeable against said common territory up to $36,250, which is $11,250 in excess of its said constitutional limit. And, inasmuch as different portions of the same road district can not be subjected to unequal burdens of such bonded indebtedness created for the common benefit of the entire road district, said $85,000 bond issue, as a whole, is excessive to the extent of four times the amount of such excess against section 4, or $45,000. Yet, if said practical rule of the Simmons case were correct, it would become the duty of the Attorney-General, upon proper request, to approve said entire $85,000 issue of road bonds.

For purposes of test and illustration of said rule it is pertinent to inquire: What amount of valid road bonds may such assumed road district really issue? Without presuming to lay down, herein, a general rule upon the subject, and limiting my remarks strictly to the purposes of such test, I think that, with propriety, I may venture to say: A chain is no stronger than its weakest link. A battleship squadron is no faster than its slowest unit. Water will not rise above its level, without pressure. Likewise, the maximum bond issuing capacity of the assumed road district is that amount which bears to one-fourth of the assessed valuation of its real property the same relation or proportion which the reserve and unexercised bond issuing capacity of the common territory, under said section 52, bears to one-fourth of the assessed valuation of the real property within such common territory. Evidently no such relation or proportion exists, in the assumed case, between an amount representing one-fourth of the assessed valuation of the real property within said road district and the amount of outstanding drainage bonds previously issued by the drainage district against its own territory—the criterion embodied in said practical rule of the Simmons case. If those two relations or proportions were found to be identical in any instance their co-existence would be purely accidental. They were not co-existent in the Simmons case.

Now, the maximum total capacity of the common territory comprising said drainage district in the assumed case to issue bonds authorized by section 52 is limited to one-fourth of the assessed valuation of its real property, or $25,000. Const. of Texas, art. 3. sec. 52; Simmons v. Lightfoot, *supra;* also, original opinion herein by Chief Justice Brown.

Consequently, inasmuch as said drainage district has already issued, and there are outstanding, against said common territory, drainage bonds amounting to $15,000, the reserve and unexercised total bond issuing capacity of said common territory, for purposes authorized by said section 52 is only $10,000; which is found to be forty per cent of one-fourth of the assessed valuation of real property within said common territory. And this maximum rate per cent, representing, as it does, the entire reserve bond issuing capacity of said common territory under said section 52, becomes and is the real measure of the maximum proportionate capacity of the other portion of said road district, and thus,

in ultimate effect, of the entire road district, to issue road bonds. In other words, the capacity of the assumed road district to issue road bonds is measured, upon that percentage basis, by the total reserve capacity of said common territory to issue bonds of the classes designated by section 52; and not by the difference between the amount of such bonds previously issued against said common territory and an amount representing one-fourth of the assessed value of real property within the road district.

The common territory can not be so subjected to additional bonded indebtedness of that character exceeding, in the aggregate, an amount which when added to its outstanding aggregate bonded indebtedness of that character will exceed an amount equal to one-fourth of the assessed valuation of real property within said common territory. That is to say: If the drainage district had previously issued, and there had then been outstanding, against said common territory, the full quota of bonds permitted by section 52, the assumed road district could not legally issue a dime's worth of road bonds. Stated briefly, such rate as will complete the maximum bond issue possible in the drainage district becomes the maximum rate possible throughout the entire road district; a single rate must prevail throughout the entire road district. Art. 8, sec. 1. And, in practical application to the facts of the assumed case, said road district therein can not issue road bonds in an amount exceeding forty per cent of one fourth of the assessed valuation of its real property, or forty per cent of $100,000, which amounts to $40,000. Up to that amount the road district may issue road bonds without infringing upon either section 52 of article 3 or section 1 of article 8 of our Constitution; but beyond that amount it may not go, *in issuing road bonds,* without conflict with said section 52, or having made such excessive issue, it can not *levy and collect sufficient taxes* to retire such entire excessive issue, without conflict with said section 1 of article 8.

Passing to the facts of Simmons v. Lightfoot, *supra,* and using the figures therein given, the situation there is found to have been, substantially, as follows:

PLAT ILLUSTRATING

Simmons v. Lightfoot, 105 Texas, 212, 146 S. W., 871.

E ——————————————— A ——————————————— D

Drainage District.

Valuation ...............$409,925.00

Normal bond cap.......... 102,481.25
Bonds issued ............ 85,000.00

Reserve cap. ............ 17,481.25

B ⌐                                    ⌐ C

Assessed value real property...................$1,420,015.00

Normal bond capacity..................... ....... 355,003.00
Bonds issued ............................... ...... None.

F ——————————————————————————————— G

Drainage District, A, B, C, D.

Assessed valuation, real property.......................$  409.925.00
Normal bond capacity (¼)...............................   102,481.00
Drainage bonds previously issued.....................    85,000.00
Reserve bond capacity...............................     17,481.00

Road District, E, F, G, D.

Assessed valuation, real property.....................  1,420,015.00
Normal bond capacity (¼)............................    355,003.00
Road bonds issued...................................    None.

Applying, now, said practical rule of the Simmons case: deducting from one-fourth of the assessed valuation of the real property within said road district...................................$355,003.00
the amount of said drainage bonds...................... 85,003.00
                                                       _____
the remainder is...................................$270,000.00

and that, according to said rule, represents the amount of road bonds which said road district may legally issue. That is precisely what this court there found, *in figures,* and held to be approximately correct, upon the facts of that record. But it was there held, also, in effect, that land in the drainage district may be taxed, for the drainage bonds, upon only $102,481—$85,000, or $17,481.

Those figures faithfully reflect the facts of that case, and the calculation is *mathematically* correct, substantially, as there stated; the trouble lies in the rule which there applied.

Accordingly, as the bonds there tendered for approval amounted to only $100,000, the court ordered the Attorney-General to approve them.

However, it will be noted that the outstanding $85,000 in drainage bonds previously issued by the drainage district amount to a little over 20.7 per cent of the assessed value of real property within the drainage district, and that said issue of $100,000 in road bonds by said road district amounted to a little over 7.04 per cent of the assessed valuation of real property in said entire road district, *including the drainage district.*

Consequently, said drainage bonds and the portion of said $100,000 in road bonds *proportionately and uniformly* chargeable to said common territory together amounted to a little over 27.74 per cent of the assessed valuation of real property situate in such common territory, or more than 2.74 per cent in excess of the constitutional limit of one-fourth of the assessed valuation of real property situate in said common territory.

It will also be observed that under the view announced in that case regarding assessment and collection of taxes that common territory comprising that drainage district is to·be taxed in an amount sufficient to pay only a little more than 6.4 per cent of said $100,000 in road bonds, although the assessed value of its real property is a little more than 28.8 per cent of the assessed valuation of real property in that entire road district—a glaring inequality in taxation which, as hereinabove shown, is denounced by said section 1 of article 8 of the Constitution.

Whatever that ratio of un-uniformity would be substantially changed by the fact that personal property, also, is taxed does not appear, inasmuch as the valuation of the personal property in either the drainage district or the road district is not shown by the opinion or by the record in the Simmons case.

However, if it were so changed it would, I think, be wholly immaterial *in principle,* since such change might happen to alleviate the situation, in one instance, by tending to ·render taxation uniform throughout the drainage district, but, in another instance, it might aggravate the evil by rendering taxation throughout the common territory still less uniform. Mention of that feature is made here because it is presented by relators in the case at bar.

If applied to the facts of the Simmons case, the method which I have hereinabove suggested for determining the amount of road bonds which might legally be issued by the road district in the assumed case would result in the conclusion that maximum amount of road bonds which the road district in the Simmons case was entitled to issue was, approximately, $60,350.65.

In other words, the reserve bond issuing capacity of that drainage district was, approximately, $17,481.25, which was a little over 17 per cent of the total bond issuing capacity of that common territory under section 52, and that same proportion of $409,925, which was one-fourth of the assessed valuation of real property situate within said road district, or $60,350.65, approximately, represents the maximum amount of road bonds which that road district might equally issue.

Consequently, my conclusion is that, in the Simmons case, the amount of said road bonds there tendered for approval, $100,000, was excessive to the extent of $39,649.35, approximately, and the declination of the Attorney-General to approve them in that amount as tendered was proper, and, the writ of mandamus there granted should have been denied.

The full gravity of that decision does not appear until it is remembered that said $100,000 in road bonds, which the Attorney-General was there directed to approve, formed only a relatively small share of the $270,003, approximately, in road bonds which that opinion expressly declared that road district then had constitutional and statutory capacity to issue, under the facts of that case.

It is plain, I think, that the operative portions of said decision in the Simmons case, including the grant of the writ of mandamus, are flatly contradictory of the italicized portion of the following excerpt from the opinion in that case:

"While it is true we have held as herein stated that two or more districts for different purposes may embrace the same territory and remain separate and distinct units or entities, yet from this it does not result that the real property the subject of taxation is distinct in such districts so formed. The taxable property remains the same while administered over by separate and distinct entities, and *their joint authority to create a debt against this property is limited by the Constitution to the aggregate amount of one-fourth of the assessed value of such property*. This seems to us to be the plain and undoubted language of the section of the Constitution under consideration." (Italics mine.)

The reference therein was to said section 52 of article 3.

Turning for final test to the facts of the case at bar, in which the road district embraces a part of each of two previously formed drainage districts, each drainage district having already issued drainage bonds, they are found to be substantially as below stated:

A, B, C, D.  Drainage District No. 5.

Assessed valuation, real property......................$   409,925.00
Normal bond capacity................................      312,507.90
Drainage bonds issued...............................      275,000.00

Reserve bond capacity...............................$    37,507.00

B, E, F, G.  Drainage District No. 8.

Assessed real property valuation....................$   599,188.50
Normal bond capacity................................      149,797.12
Drainage bonds issued...............................      127,000.00

Reserve bond capacity...............................$    22,797.12

H, I, J, K.  Road District.

Assessed real property valuation....................$   757,106.70
Normal bond capacity................................      186,776.67
Road bonds issued...................................      000,000.00

Reserve bond capacity...............................$   186,776.67

Applying said practical rule of the Simmons case as I understand its application to the facts of this case, the calculation stands thus:

From one-fourth of the assessed valuation of real property
within the road district...........................$186,776.67
deduct the aggregate amount of bonds previously issued by
the drainage districts, respectively: $275,000+$127,000= 402,000.00

But that is impossible, the subtrahend being larger than the minuend. So the attempted calculation ends; and said rule fails here.

But reverting to and applying here the method hereinabove suggested for ascertaining the amount of bonds which the assumed road district may issue, it is found:

(a) That outstanding drainage bonds previously issued by drainage district No. 5 aggregate, approximately, 22 per cent of the assessed valuation of its real property, and outstanding drainage bonds previously issued by drainage district No. 8 aggregate a little less than 21.2 per cent of the assessed valuation of its real property.

(b) That, consequently, the present reserve capacity of the territory within drainage district No. 8 to issue bonds authorized by said section 52 is *less, proportionately*, than that of any other portion of said road district; wherefore it becomes, by force of said constitutional provisions, the true measure of the present capacity of said entire road district to issue road bonds.

(c) That said reserve capacity of drainage district No. 8 is $22,-797.12, which is .1521 per cent of one-fourth of the assessed valuation of real property within said drainage district No. 8 ($149,797.12); consequently, .1521 per cent of $186,776.67, which is one-fourth of the assessed valuation of real property within said road district, or $28,-408.73, represents, approximately, the actual present maximum power or capacity of said road district to issue road bonds. But it would not have been proper for respondent to have approved, as a whole, that entire issue of $50,000 in road bonds.

I concur in the order overruling said motion. The foregoing is filed as merely an expression of my own individual views.

Opinion delivered June 26, 1915.

*Mandamus refused.*