## DALLAS JOINT STOCK LAND BANK OF DALLAS v. ELLIS COUNTY LEVEE IMPROVEMENT DIST. NO. 3.

### No. 2749.

Court of Civil Appeals of Texas. El Paso. Dec. 15, 1932.

228

Renfro, Ledbetter & McCombs, of Dallas, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, for appellee.

## WALTHALL, J.

This is a suit by appellee against appellant to recover delinquent taxes levied for the year 1929, together with penalty, interest, and foreclosure of lien upon the two tracts of land described in the petition, against which the taxes were levied. Judgment was rendered in favor of the plaintiff, from which the defendant appeals.

The questions presented arise upon the action of the court in overruling demurrers to the petition and in sustaining demurrers to portions of the answer. A brief statement of the pleadings will suffice.

The plaintiff alleged it "was duly organized and created by virtue of an order of the Commissioners' Court of Ellis county, Tex., duly made and entered on the 14th day of January, 1916, under authority conferred by the 1904 Amendment to section 52 of article 3, Texas Constitution, and chapter 146, General Laws passed by the 34th Legislature at its regular Session in 1915, and which order is of record in Book T, page 230, of the minutes of said Commissioners' Court." It then sets up the issuance of various bond issues by it; the issues extending over a period of time from April, 1916, to January, 1924. The allegation respecting the first issue is typical of those respecting the subsequent issues, and reads as follows: "That thereafter the said Commissioners' Court in pursuance of an election duly called and held on the 29th day of April, 1916, did pass an order authorizing the issuance of bonds in the sum of $110,000.-00 and levied a tax on each $100.00 valuation of taxable property in said district in payment of said bonds, which order is of record in Book 1, page 406, of the Minutes of said Commissioners' Court."

The levy for the year 1929 by the commissioners' court of Ellis county of a tax of $38.-20 on each $100 valuation of taxable property in the district for the purpose of paying interest and principal of said bonds; the valuation for 1929 of one of the tracts against which the taxes are assessed is $1,785, and the valuation of the other tract is $4,495. The approval of the bonds by the Attorney General, registration in the comptroller's office, and sale of such bonds was alleged, together with other allegations usual in suits of this nature.

In addition to its demurrers and general denial, defendant pleaded that it was the owner of $21,000 of the bonds described in the petition, each bond being in the principal sum of $1,000; that interest is past due and unpaid on all of the bonds, and the principal of three of the bonds is past due and unpaid. The amount of the past-due interest and principal on the three matured bonds and the amount of attorney's fees provided for therein was pleaded as a counterclaim and in set-off against the taxes sued for.

Section 52 of article 3 of the Constitution of this state authorizes a district such as the plaintiff to "issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district."

Appellant asserts that an assessment of taxes in a district such as appellee, in one year, in an amount more than one-third of the valuation of the real property therein, is void under the constitutional provision quoted; also that such a tax is confiscatory and in violation of the due process clause of the Federal Constitution.

To this appellee replies that it has become a conservation and reclamation district under section 59 of article 16 of the Constitution, commonly known as the Conservation Amendment, adopted August 21, 1917, and as authorized by chapter 25, p. 40, Acts of 35th Legislature (1918), 4th C. S., and such amendment does not limit the indebtedness which may be created by districts organized under the authority thereof.

The ruling of the trial court upon defendant's demurrer cannot be sustained upon this theory of appellee, for it is predicated upon an assumption which is not supported by the allegations of the petition. It is true chapter 25, Acts of the 35th Legislature (4th Called Sess.), in its ninth section, authorized appellee to become a conservation and reclamation district under section 59, art. 16, of the Constitution, and prescribed the procedure for so doing. But there is no allegation that appellee availed itself of the privilege conferred of becoming such a district under section 59, art. 16. It was left to the option of districts theretofore organized whether they would come under the operation of the Conservation Amendment and the said act of the Thirty-Fifth Legislature.

We have quoted the allegation of the petition showing it was organized in January, 1916, under the authority of section 52, art. 3, of the Constitution, and chapter 146, of the Acts of the 34th Legislature. In view of this allegation, appellee cannot claim the benefit of the Conservation Amendment of

1917, without also alleging it had availed itself of the privilege so to do as conferred by the act of the Thirty-Fifth Legislature. In the state of the pleadings it cannot be assumed appellee has come under the operation of the constitutional amendment of 1917. .

But the point made by appellant is untenable for the reason to be now stated. There is nothing in the petition from which it can be assumed that when the bonds were issued, they exceeded in amount one-fourth of the assessed valuation of the real property in the district. It must be assumed the authorized authorities inquired into that question at the time and found that the indebtedness created by the various issues did not exceed the constitutional limitation. The Attorney General would not have approved the issues unless the debt created thereby was within the constitutional limitation. Munson v. Looney, 107 Tex. 263, 172 S. W. 1102, 177 S. W. 1193. There is nothing to impeach the validity of the bonds when issued and sold. When they were so issued and sold, all of the taxable property in the district was in effect pledged for their payment.

A subsequent decline in the property valuation will not relieve the taxing authorities of the duty to annually levy a tax in an amount sufficient to pay interest upon the bonds and provide a sinking fund for their redemption at maturity. Such decline in the property valuation may necessitate . a heavy and burdensome levy, but that fact of itself does not invalidate such levy. Section 52 of article 3 simply places a limitation upon the amount of indebtedness which may be created. There is nothing therein which can be construed as limiting, in subsequent years, the rate which may lawfully be assessed and levied to pay principal and interest upon bonds which at the time of their issuance did not exceed the constitutional limitation and were otherwise valid obligations.

For these reasons we are of the opinion the defendant's demurrers raising the question at issue were properly overruled.

Nor did the court err in sustaining the plaintiff's exceptions to defendant's plea of counterclaim and set-off. The tax sued for is to pay interest and provide a sinking fund to pay bonds, some of which are owned by defendant, but section 6, art. 11, of the Constitution has no application to a levee improvement district.

The general rule of law is that a claim against the state or municipality cannot be set off against a tax demand. Cooley on Taxation (2d Ed.) 17. A tax is not a debt in the usual and ordinary sense of the word. City of New Orleans v. Davidson, 30 La. Ann. 541, 31 Am. Rep. 228; Cooley on Taxation (2d Ed.) 15.

"The general rule, based on grounds of public policy, is well settled that no set-off is admissible against demands for taxes levied for general or local governmental purposes." 24 R. C. L., p. 817.

In 57 C. J. at page 381, the rule is stated as follows: "In an action for taxes set-off of an indebtedness of the state or municipality to the tax debtor will not be allowed, the statutes of set-off being construed in the light of public policy as not allowing the remedy in proceedings for this purpose, unless expressly authorized by statute." Numerous authorities are cited in support of the text.

Under the authorities cited, plaintiff's exception to the counterclaim pleaded by appellant was properly sustained.

Affirmed.