

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

Grover Sellers
XXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable T. M. Trimble
First Assistant
Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. 0-6059

Re: Under the given facts can the City Council of the City of Austin levy a maintenance tax for the support of the public free schools of the Independent School District of the City of Austin? And a related question.

We are in receipt of your letter of recent date in which you enclose a letter from Mr. Carl T. Widen, President of the Board of Trustees of the Austin Independent School District, which letter reads, in part, as follows:

"The City of Austin assumed control of the public free schools within its limits by an election held on August 16, 1880, under Act of April 3, 1879, Ch. 67, p. 76.

"All of the charters of the City of Austin since 1880, including the Home Rule Charter that the City of Austin is now operating under, have provided:

"'The action of the City of Austin in taking charge of the public free schools within its limits by proceedings had in the month of August, 1880, is hereby validated, and the City is hereby constituted a separate and independent school district under the Constitution and laws of the State. The action taken in placing the control of the free schools and all property pertaining thereto in a board of trustees is hereby confirmed, and all property, real and personal, heretofore acquired and now being administered by said Board of Trustees in connection with the management of said free schools is hereby confirmed in said Board, and all levies of taxes

heretofore made for the support and maintenance of said public free schools in said City and which remain uncollected are hereby validated and declared legal and binding upon the persons and property subject to taxation in said City, and the City Council shall continue to levy and collect the rate of special taxation adopted or which may be adopted by vote of the people for said purpose, and deliver the same to said Board of Trustees, in accordance with the general laws of the State upon the subject.'

"Sec. 10 of Art. 12, p. 49 of the Home Rule Charter reads:

"'All laws now in force, pertaining to the public free schools of the City of Austin, are hereby retained in full force and effect, and said schools shall be continued, managed and controlled as heretofore, and the trustees of the said public free schools shall be elected according to the provisions of the above mentioned laws retained in force and effect.'

"The Charter of 1909, granted by the Legislature, Art. 12, Sec. 2, p. 37 reads:

"'The City Council shall have the power within the city by ordinance to levy and collect an annual tax, not exceeding for all purposes, including taxes levied for the support of public schools, two and one-half per cent of property values within the said city.'

"This provision was carried into the Home Rule Charter, under which the City is now operating, and is now Sec. 2 of Art. 12, p. 38 of the Home Rule Charter.

"Subdivision 2 of Sec. 2, Art. 12, p. 38 of the Charter of 1909 provided:

"'How Increased--Limitation. To raise such further amount as may be necessary for the maintenance of the public schools of the city, not to exceed thirty-three and one-third cents on the one hundred dollars' worth of taxable property, unless the qualified taxpaying voters of the city shall by a two-thirds vote provide for an increase in such amount, and in no event shall it exceed fifty cents on the one hundred dollars' valuation.'

Honorable T. M. Trimble, Page 3  O-6059


"In the Home Rule Charter, changing from the commission form of government to the home rule form, this provision was amended to read as follows:

"'To raise such further amount as may be necessary for the maintenance of the public schools of the City, not to exceed sixty cents on the one hundred dollars worth of taxable property in the City. The Board of Trustees for said schools shall determine and advise the City Council as to what amount of said tax shall be levied and collected each year, and the City Council shall levy the amount so determined, but if at any time said Board fails to do so, the City Council shall levy such tax at the same rate as levied for the last preceding year.' Subdivision 2, Sec. 2, Art. 12, p. 36.

"This subdivision of the Home Rule Charter was further amended by an election held on May 10, 1940, to read as follows:

"'To raise such further amount as may be necessary for the maintenance of the public schools of the City, not to exceed seventy cents on the one hundred dollars worth of taxable property in the City. The Board of Trustees for said schools shall determine and advise the City Council as to what amount of said tax shall be levied and collected each year, and the City Council shall levy the amount so determined, but if at any time said Board fails to do so, the City Council shall levy such tax at the same rate as levied for the last preceding year.'

"The Independent School District of the City of Austin does not coincide with the city limits of the City of Austin, but includes additional territory annexed for school purposes only under Art. 2803, Revised Statutes 1925.

"We wish the following questions answered by the Attorney General:

"1. Can the City Council of the City of Austin, by a vote of the property taxpayers, levy a maintenance tax for the support of the public free schools of the Independent School District of the City of Austin for as much as one dollar on the one hundred dollar valuation of taxable property in the school district and still be entitled to levy a tax for municipal purposes of two dollars and fifty cents on the one hundred dollar valuation of taxable property within the city limits, under the Constitution and laws governing home rule cities? In other words, can the City Council of the City of Austin levy a one dollar tax on the one hundred dollar valuation of taxable property in the Independent School District of the City of Austin for the maintenance of public

free schools in the school district and still be entitled to levy as much as a two dollar and fifty cent tax on one hundred dollar valuation of taxable property in the City of Austin for municipal purposes ?

"2.   In an election held for the purpose of divorcing the public free schools of the City of Austin from the control of the City of Austin, under Acts of 41st Legislature, p. 674, Ch. 302, Vernon's Civil Statutes 1925, Art. 2783a, can there be submitted to the voters the rate of maintenance tax for school purposes to be levied and collected by the school district after its divorcement from control of the City ? * * *"

In dealing with schools which are under the control and management of cities the courts have consistently held that the rate of tax which may be levied for school purposes in such cities is limited by Article 7, Section 3 of the Constitution of Texas, which relates to schools and is not controlled by Article 8, Section 9 of the Constitution, which limits the tax rate of counties, cities and towns.

In other words, in this respect, the courts have treated schools under the management and control of cities as school districts rather than as a part of the cities under whose control the schools are operated.

The first of these cases is Houston v. Gonzales Independent School District, decided by the Commission of Appeals in 1921, 229 S. W. 467. The City of Gonzales, while exercising control of its schools had issued bonds for the erection of school buildings which required a tax levy of 17¢. Thereafter, the Legislature, by special Act, divested the City of Gonzales of control of its schools and created the Gonzales Independent School District comprising the city and approximately 24,000 acres in addition thereto. The trustees of the new district then attempted to levy a 40¢ tax on the property of the entire district. The court held that the new tax was valid only to the extent of 33¢ because at that time, Article 7, Section 3 of our Constitution, limited taxes for school purposes to 50¢ so that the school district could levy only 33¢ in addition to the 17¢ previously levied by the City of Gonzales while in control of the schools.

The court held that the 17¢ tax originally levied by the city for school purposes was a school tax authorized and limited by Article 7, Section 3 of the Constitution, and not a city tax limited by Article 8, Section 9 (which limits counties, cities and towns to 25¢ "for the erection of public buildings, sewers, waterworks and other improvements."). Spencer, J., speaking for the court at page 468, said:

"The beneficial title to the property of the Gonzales School district as originally formed was in the people thereof - the mayor merely holding the same in trust for the sole use of the schools - and the Legislature could, without any wise disturbing such title, change the trustees, as was done by the special act."

And at page 469:

"The bonded indebtedness being for school purposes, the 17¢ tax levy necessary to pay the interest thereon and provide a sinking fund, to retire same at maturity, is a limitation upon the taxing power of the district, but not a limitation upon the city of Gonzales for building purposes."

The leading case announcing the doctrine of the dual nature of a city which has assumed control of its schools is City of Rockdale v. Cureton, decided by the Texas Supreme Court in 1921, 111 Tex. 136, 229 S. W. 852. We quote from the court's statement of the facts in this case:

"Prior to 1918, the city of Rockdale, incorporated under the general laws, had assumed the control of its public schools. The effect of this action was to constitute it, for school purposes, an independent school district. Article 2871.

"It has never extended its city boundaries for school purposes."

This was an action to compel the Attorney General by mandamus to approve a $75,000 bond issue which he had refused to approve for the reason that the tax necessary to pay the same would exceed the city's 25¢ tax limit for improvements, imposed by Article 8, Section 9 of the Constitution. The court granted the mandamus for the reason that the tax of such a city for school purposes is not limited by Article 8, Section 9, but by Article 7, Section 3 of the Constitution. We quote from the opinion of Chief Justice Phillips:

"The Constitution (Section 10 of Article 11) has empowered the Legislature to constitute any town or city an independent school district. The Legislature, therefore, had the power to say as it has done in Article 2871, that a city or town taking over control of its public schools shall constitute such a district. There may thus be conferred upon a city a dual character, and which such character, dual powers. There could have been no purpose in authorizing the creation of towns and cities as independent school districts - a recognized separate class of municipal corporations with individual powers, unless in that capacity

they were to have the powers of such districts.

"The city of Rockdale had lawfully acquired this dual
character.  It had powers strictly as a municipality, to be
exercised for strictly municipal purposes; and it had its
powers as a duly constituted independent school district.
The two are not to be confused."

In M. K. & T. R. R. Co. of Texas v. City of Whitesboro, (1926),
287 S. W. 904, the Texas Commission of Appeals again declared that the tax
rate for cities which have assumed control of their schools is controlled by
Article 7, Section 3 of the Constitution both before and after such city may
have extended its limits for school purposes only.  Biship, J., at page 906,
said:

"The municipal corporation and the independent school
district are distinct, though they are both under the control
of the same officers."

It may appear that City of Athens v. Moody, (1926), 115 Tex. 247,
280 S. W. 514, by the Commission of Appeals, is in conflict with the doctrine
announced by the preceding cases which recognize the dual nature of cities
which have assumed control of their schools.  A careful analysis of this case,
however, indicates that it does not disavow the dual nature of cities having
control of their schools, but merely recognizes the $1.50 limitation on the
tax rate of cities having a population of less than 5,000 for both school and
municipal purposes, pursuant to the express language of the statute there
under consideration.  (Section 3 of Chapter 9, Acts 1929, 37th Legislature,
which is now codified as Article 1027, R. C. S., 1925).

Again we find the courts declaring that those eligible to vote on an
increase in taxes for school purposes in cities which have assumed control
of their schools is to be governed by Article 7, Section 3 of the Constitution,
relating to school districts rather than to the provisions relating to cities.

In City of Fort Worth v. Zane-Cetti (1925), 278 S. W. 183, the Texas
Commission of Appeals held that an election to increase the tax rate for school
purposes in Fort Worth (which has assumed control of its schools) must be by
the "qualified property tax paying voters" as provided by Article 7, Section 3
of the Constitution, instead of by the "qualified voters" as provided by Fort
Worth's home rule charter.  Said Nichols, J., at page 184:

"The source of the legislative power to create, or define an
independent school district is to be found in Section 3, Article 7

of the Constitution. Such a district is a municipal corporation, sui generis. City of Rockdale v. Cureton, Attorney General, 111 Tex. 136, 229 S. W. 852. The territory of a city and the territory of a district may be exactly coincident, and for the distinctive purposes, separate governments may be provided to operate separately, but harmoniously, within the common orbit. Simmons v. Lightfoot, Attorney General, 105 Tex. 212, 215, 146 S. W. 871; Munson v. Looney, Attorney General, 107 Tex. 263, 268, 172 S. W. 1102, 177 S. W. 1193. Or, in virtue of the terms of Section 10, Article 11, of the Constitution, and for convenient administrative purposes, 'the Legislature may constitute any city or town a separate and independent school district.' Such a combination of the two municipal corporations, each sui generis, does not take from either its distinctive features."

In Treaccar v. City of Galveston, (Galveston Court of Civil Appeals, 1930, writ of error refused), 28 S. W. (2d) 887, the court held that an additional school tax in the City of Galveston was valid when based upon a vote of a "majority of the qualified tax paying voters of the district voting at an election" as provided by Article 7, Section 3 of the Constitution, even though this election did not satisfy the requirement of Article 11, Section 10 of the Constitution, that "two-thirds of the tax payers of such city or town shall vote for such tax," thereby further indicating that city controlled schools are treated for election purposes as "school districts" rather than as "cities." We quote from the opinion of Pleasants, C. J., at page 891:

"The City of Galveston is one of the school districts of the State, created as such in the manner provided by our Constitution and legislative acts, and in its capacity as a school district it cannot be denied the rights and privileges given by the Constitution to all other school districts in the state. It cannot be held that because it is an incorporated city having a special municipal charter that its constitutional powers as a free school district of the State are in any way lessened or restricted. We think this question is settled by the opinion of our Supreme Court in the case of Rockdale v. Cureton, 111 Tex. 136, 229 S. W. 852."

We wish to cite only a few additional cases which further indicate that city controlled schools are to be treated as independent school districts rather than as integral parts of the cities.

In City of Fort Worth v. Cureton, (1920) 110 Tex. 590, 222 S. W. 531, the Supreme Court construed the charter of the city of Fort Worth which limited

the tax rate for all purposes to $1.75 "inclusive of the school tax that may be levied by the board of trustees of public schools as provided by this Act" so as to authorize an increase in the combined tax rate when the tax rate for school purposes only was increased by charter amendment. The court alluded to the dual character of a city which has control of its schools and declared that the charter should not be construed so as to reduce the authorized tax rate for general municipal purposes in the event of an increase in the rate for school purposes only.

In City of Belton v. Harris Trust & Savings Bank, 273 S. W. 914, (affirmed by the Texas Commission of Appeals, 283 S. W. 164) the Austin Court of Civil Appeals held that a charter provision authorizing a $1.50 tax rate without stating its purpose, had reference to taxation for general municipal purposes under the home-rule amendment, and had no relation whatever to the city's taxing power as an independent school district.

The Austin Court of Civil Appeals, in Temple Independent School District v. Proctor, (1936) 97 S. W. (2d) 1047, (writ of error refused), held that the validity of a contract between the Superintendent of Schools in Temple and the school board (which was appointed by the city council; Temple having assumed control of its schools) was to be governed not by the city charter but by the statutes relating to school affairs. In this case Judge Baugh declared, at page 1053:

> "It is now settled, however, that, where such city does assume control of its schools, such control so far as the schools are concerned, does not become merged into and become a part of the municipal government as such. And where the city commissioners or city council retains control of its public schools it acts in a dual capacity - one as a governing body of the city in its status as a municipality, and the other as the controlling or governing board of its schools. The two capacities are not to be confused. City of Rockdale v. Cureton, 111 Texas 136, 139, 229 S. W. 852; City of Fort Worth v. Zane-Cetti, (Tex. Comm. App.) 278 S. W. 183; in so far as it acts in its strictly municipal governmental capacity, its powers are referable to Article 11 of the Constitution and title 28 of the R. S. (Article 961, et seq., as amended (Vernon's Annotated Civil Statutes, Article 961, et seq.)). Whereas, in the management and control of its schools, its powers are referable to Article 7 of the Constitution and Title 49 of the R. S. (Article 2584, et seq., as amended (Vernon's Annotated Civil Statutes, Article 2584, et seq.))."

The separate and distinct character of a city school district and the city under whose control it is operated is most forcefully illustrated by the case

of City of El Paso v. Carroll, (writ of error refused) wherein it was held that the City of El Paso was not authorized to take $54,000 out of the general fund for municipal purposes and loan this money to the school district which was under the control of the city, for the reason that the school district so constituted and the city were two separate governmental entities and their respective finances should be kept distinct and separate.

In answer to your first question, you are advised that in our opinion the Austin Independent School District may, by a vote of the property taxpaying voters, authorize the levy and collection of a tax of $1.00 on the one hundred dollars valuation of taxable property in the district; the tax authorized for school purposes, however, would include the rate of tax required to pay the school bonds of the district. Houston v. Gonzales Independent School District, supra. Since it appears that the charter of the City of Austin contains provisions limiting the rate of tax which may be imposed to a maximum of $2.50 for school and municipal purposes combined it follows that if the rate of school tax is increased, the rate for municipal purposes must be limited to the difference between the levy for school purposes (both for bonds and maintenance) and the maximum overall rate of $2.50 fixed by charter.

Section 5 of Article 11 of the Constitution, provides that Home Rule cities "may levy, assess and collect such taxes as may be authorized by law or by their charters, but no tax for any purpose shall ever be lawful for any one year, which shall exceed two and one-half per cent of the taxable property of such city * * *." This limitation applies to the tax for municipal purposes and if it were not for the limitation above quoted from the charter of the City of Austin, the city could levy $2.50 on the $100 of taxable property for municipal purposes, in addition to the school tax.

The City could, therefore, by charter amendment, increase its rate for municipal purposes to as much as $2.50 on the $100 valuation in addition to the school tax.

In answer to Mr. Widen's second question, you are advised that the question of a maintenance tax for school purposes may not be submitted in the election held for the purpose of divorcing the public free schools from the control of the City of Austin. Chapter 302, Acts 41st Legislature, Vernon's Civil Statutes, 1925, Article 2783a, authorizes the Mayor to order an election upon proper petition. The Mayor is not authorized to order an election for a maintenance tax for school purposes; this election must be ordered by the governing body of the independent school district. Another reason is that an election held for the purpose of divorcing the public free schools from the City of Austin,

any qualified voter may vote, whereas in an election for a maintenance tax, only qualified voters who are property taxpayers may vote.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *C. F. Gibson*

C. F. Gibson
Assistant

CFG:EP

APPROVED JUNE 27, 1944

(Acting) ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
By
Chairman