M. A. GRAHAM ET AL. v. J. L. DEWEES ET AL.

No. 7427.

1. Surveys—Actual Survey Controls Course and Distance.—The principle is well fixed, that course and distance must yield to the demands of an actual survey, when the evidence establishes the fact of such a survey.

2. Calls in Survey.—A call for a stake and mound in one survey considered identical with a stone mound in another later survey made by same surveyor, the two surveys being mapped as adjoining by the surveyor.

3. Fact Case.—See facts held sufficient to establish an actual survey identifying the facts of actual surveys, and that two surveys had a common line.

APPEAL from Haskell. Tried below before Hon. J. V. COCKRELL.

*L. W. Campbell*, for appellants.—1. When surveys were made about the same time by the same surveyor, and calling for each other as being contiguous and abutting surveys, and so stated in the official field notes returned to the General Land Office, evidence of a small excess in long lines, and slight variations of the course, is no proof of a vacancy between such surveys. Freeman v. Mahoney, 57 Texas, 621.

2. He who at this late day, when lands have become valuable and those who originally surveyed them have passed away, makes a location between grants which surveyors, who originally surveyed them more than thirty years ago, under their official oaths declared to be contiguous, should come prepared with evidence which will clearly show that such declarations were made in mistake; and such evidence must be something more than that the grants will be in excess of the area called for to make such declarations good.

*A. C. Foster* and *Cockrell & Cockrell*, for appellees. — 1. If the west lines of the Scott, Ramos, and Campbell surveys were not actually run on the ground and established by calls for natural or artificial objects, the junior surveys put in to the west and calling for such unmarked west lines, the east line of the junior surveys being established, will not draw said older surveys to the established east line of the junior surveys, if to do so course and distance in the calls of such older surveys are overridden.

2. When a marked line is called for in a grant, it is only when the line can be identified on the ground as the one made by the surveyor that it will control a call for course and distance. Duff v. Moore, 68 Texas, 271; Fagan v. Stoner, 67 Texas, 286; Robinson v. Doss, 53 Texas, 496.

3. The burden was on plaintiffs to show that the land in controversy was certainly embraced within their boundaries. It is the duty of plaintiff to show and establish his corners, and that construction is to prevail which is most against a party claiming under an uncertain survey; and course and distance ought to prevail in the determination of the correct position of a line, in the absence of other evidence tending to establish with reasonable certainty a different result. Schaeffer v. Berry, 62 Texas, 705; Duff v. Moore, 68 Texas, 270; Freeman v. Mahoney, 57 Texas, 625.

TARLTON, Judge, *Section B.*—Plaintiffs, appellants in this court, were the owners of the James Scott league and labor in Haskell County. As such they sued defendants, appellees, to recover the land here in controversy, consisting of 160 acres. Appellants claim that this land is out of the western portion of the James Scott survey; appellees claim that it is a vacant strip lying between the west end of the Scott survey and sections 35 and 36, Houston & Texas Central Railway Company's land.

The annexed diagram, describing the litigated tract by the word "controversy," presents with substantial accuracy the location of said tract, and of contiguous and surrounding surveys.

NORTH.

| | | | | |
|---|---|---|---|---|
| Sec. 36 H. & T. C. R. R. Co. — Sec. 35 H. & T. C. R. R. Co. | Controversy. | James Scott. | 108 | Shepperd. |
| 140 Peter Allen. | O Centre. | Isidro Ramos. | 109 | 55 Leaper Willoughby. |
| 21 | 20 State. — 19 C. M R.R. H. & T. C. R. R. | Standefer. Hill O. Campbell. | 110 | 54 Jno. N. Gainer. |
| H. & T. C. R. R. 17 | 16 State. | Thos. Dye Owing. 111 | | 35 Ezra Read. |

From a judgment rendered by the court, without a jury, in favor of the defendants, the plaintiffs appeal, and by their several assignments present the sole question, Does the evidence show that the land in controversy is a part of the Scott survey? If so, the judgment should by this court be reversed and rendered for the appellants.

William Armstrong, a surveyor, surveyed the Scott, Ramos, Campbell, and Allen surveys. The first three named were surveyed by him in August, 1855; the last in July, 1856. The Campbell was surveyed August 9, the Ramos August 10, and the Scott subsequently. No question is made with reference to the locality of the eastern boundary and corners of the Scott, Ramos, and Campbell, nor of the locality of the Allen. The north and south lines of the Scott and Ramos (league and labor surveys) are, according to the field notes, 7116 varas long. Those of the Campbell survey (a league survey) are, according to the field notes, 6842 varas long. It is contended by the appellants that there is an excess in the north and south lines of the Scott and Ramos surveys of 260 varas; that

the distance called for in the field notes must yield, and these lines must be extended in answer to the demands of a survey which the evidence clearly shows to have been made upon the ground.   It is claimed by the appellees that the evidence in no wise justifies the extension of these lines.

As already indicated, the east line of the Scott, Ramos, and Campbell surveys is a continuous line, thoroughly identified.   From this east line, and from the northeast corner of the Ramos, the south line of the Scott courses (according to its field notes) west 7116 varas for its southwest corner to the northwest corner of the Ramos, *calling for two mesquite trees to establish its southwest corner.*   The Ramos, for its south line, calls to run from a well defined point of the east line mentioned, thence west 7116 varas to a *stake and mound* in the prairie.   The Campbell, for its north line, calls to run from a point on said east line, thence west 6842 varas to a *stake* for its northwest corner.

The Peter Allen (surveyed less than a year after the above mentioned tracts) calls to begin at the " northwest corner of the H. O. Campbell, a *stone mound*," and for two mesquite trees; thence north with the *west line* of the Ramos survey, 3654 varas to the northwest corner of the Ramos, a stake and mound in the prairie.   The railway surveys, 35 and 36, made *in 1867*, recognize the northeast corner of the Allen and the northwest corner of the Ramos as the same, and call for the line running thence north as the west line of the Scott.   Appellants contend that the southwest corner of the Scott, the northwest corner of the Ramos, and the northeast corner of the Allen are identical.   If this be true, no vacancy can exist between the east line of the railway sections, 35 and 36, and the Scott, because this east line courses north from the northeast corner of the Allen, fixed beyond dispute.

The evidence of the surveyors, witnesses, shows that the theory of the appellants involves an excess of 260 varas in the length of lines described in the field notes 7116 varas long, and a variation in the course at the western terminus of these lines of 75 varas south.   Are the evidences of an actual survey made upon the ground by Armstrong, in surveying the Ramos and the Scott, such as to require that this difference in the course and distance shall yield ?

Armstrong tells us in the field notes returned by him for the Ramos, that at its southwest corner a stake and *mound* were placed.   In less than a year thereafter, he also tells us, in surveying the Peter Allen, that he establishes its southeast corner at a *stone mound*, whence he courses north with the *west* line of the Ramos for the east line of the Allen.   A *stone mound* is actually found, which unquestionably fixes the southeast corner and the east line of the Allen, and recognized necessarily as the stone mound referred to by the surveyor in 1856.   Taking into consideration the fact that Armstrong in 1856 called for the *west* line of the Ramos as coincident with the east line of the Allen, coursing north from this stone

mound, we are not permitted to reasonably doubt that this stone mound is the *mound* referred to by him in 1855 in describing the southwest corner of the Ramos. Thus the southwest corner of the Scott is, perforce of the evidence of an actual survey, identified with the northwest corner of the Ramos, the northeast corner of the Allen, and the southeast corner of the railway section number 35. The principle, too well fixed to require the citation of authority, requiring that course and distance must yield to the demand of an actual survey when the evidence establishes the fact of such a survey, is applicable here.

Appellees contend with much emphasis (and the court below evidently sustained their contention), that the call for this stone mound by Armstrong in 1856 was a manifest mistake, because in the field notes of the Peter Allen, then surveyed, he calls for "a stone mound" as at the "*northwest corner of the H. O. Campbell survey*," which could not be correct, because the field notes of the Campbell (a league survey) call for a distance of 6842 varas, and for a stake (not a mound or a stone mound) as its northwest corner. It is insisted by appellees that from the fact that the stone mound fixing the southeast corner of the Allen is 534 varas further west than the northwest corner of the Campbell, it is impossible to reconcile this difference with the accuracy of the surveyor's report. It may be conceded that the surveyor was mistaken in calling for a stone mound as "*at the northwest corner of the Campbell*," but the evidence already adverted to will not, in our opinion, allow us to conclude that he was mistaken in the *material* statement that he fixed the southeast corner of the Allen with reference to a stone mound, whence he ran its east line with the west line of the Ramos. We think that the evidence requires us to conclude that the stone mound in question was the *mound* referred to in the field notes of the Ramos as at its southwest corner.

The surveyor who made these surveys calls for them as contiguous; he tells us by means of his field notes, preserved in the Land Office, that he actually surveyed them on the ground. Evidences of such survey are yet found, and reasonably indicate an excess, at that date considered trifling, in the distance of the lines, and a slight variance in the course described in the field notes. These considerations are not sufficient to justify us in ignoring his statements as to the artificial objects, the stone mound in the case, by which the footsteps were to be traced and reasonably identified. Nor are we permitted to ignore his statements because of the purely negative facts that after the lapse of more than thirty years certain trees, such as the mesquite trees called for at the southwest corner of the Scott survey, can not be found, and that marked lines do not now exist. The trivial discrepancy of 260 varas in the length of a line 7116 varas long, and the slight difference of 75 varas in the course, should not be permitted to overcome the conclusion, which we can not avoid after close scrutiny of the evidence, that the Scott, the Ramos, the Allen,

and the railway surveys are contiguous, and that no vacancy in fact exists between the Scott and railway surveys west of it.   Freeman v. Mahoney, 57 Texas, 622.

We think that the judgment should be reversed and rendered for the appellants.

*Reversed and rendered.*

Delivered June 21, 1892.