MUNSON et al. v. LOONEY, Atty. Gen.
(No. 2665.)

(Supreme Court of Texas.    June 26, 1915.)

On motion for rehearing. Overruled.

For former opinion, see 172 S. W. 1102.

PER CURIAM. ` Motion for rehearing overruled.

HAWKINS, J. (concurring).    Upon the original hearing, this court said:

"This question was so ably and carefully discussed in Simmons v. Lightfoot, Attorney General, 105 Tex. 212 [146 S. W. 871], that we deem it unnecessary to repeat conclusions reached and expressed in that case, further than to quote as follows: [The quotation embracing what will be hereinafter referred to as a correct interpretation, *in abstract terms*, of section 52 of article 3 of the Constitution of Texas]."

For the quotation in full, see the opinion of this court in the case at bar, 172 S. W. 1102.

Upon careful consideration of relators' motion for a rehearing herein, in connection with all that was said in said original opinion in this case concerning the opinion of this court in the Simmons Case, I feel constrained to express here my views as to the bearing of said opinion in that former case upon the case at bar, lest I be longer misunderstood as approving the decision and the *entire* opinion in the Simmons Case.

Said opinion in the present case also declared:

"The opinion in the case of Simmons v. Lightfoot, 105 Tex. 212 [146 S. W. 871], seems to be wholly misunderstood and misinterpreted by the attorneys on both sides of this contention. Indeed, from some cause or other, the misunderstanding of that case seems to have caused the only difficulty in this case."

I now feel impelled to say that I no longer concur in that expression. In fact, further study of the subject has convinced me that said attorneys understand said opinion in the Simmons Case substantially as I do, and that the real difficulty in this case grows out of· serious errors and marked inconsistency in that opinion in the Simmons Case itself, and results from the fact that in the case at bar respondent asserts the correctness of one phase of said opinion in the former case, while relators rely upon another and con-

flicting phase of it. In Simmons v. Lightfoot, this court, in *abstract terms*, correctly construed section 52 of article 3 of our state Constitution, but a conflicting method of determining what amount of bonds might be issued by the road district was applied to the facts. That resulted, in that former case, in the award of a writ of mandamus to compel approval of an excessive bond issue. And the basis therein suggested and approved' for assessment and collection of taxes is one inhibited by section 1 of article 8 of said Constitution.

· The foregoing outlines this situation as I understand it. However, a fuller statement of my views of that case appears to be reasonably demanded, and may prove worth while.

Simmons v. Lightfoot, supra, was a pioneer case, and imposed upon this court the dual duty of construing and applying section 52 of article 3. Those constitutional provisions were construed and held to contemplate the establishment of a road district embracing all or part of a previously formed drainage district; and, in *abstract terms*, they were further construed, substantially, as authorizing statutes providing for the creation of an aggregate bonded indebtedness not exceeding one-fourth of the assessed valuation of real property of any district, for all five, but not for *each*, of the general purposes enumerated in section 52, and to that extent that opinion was clear, forcible, and correct. Indeed, to that extent it was unanswerable, and well entitled to be followed, as it was followed, by this court, in deciding the case at bar. But it will be observed that said original opinion herein does not quote or approve or discuss or mention any other plan or rule for ascertaining what amount of bonds any district may issue, or on what basis taxes therefor shall be assessed and collected. However, the fundamental principle which was enunciated abstractly in the Simmons Case, as embodying the correct interpretation of said restrictive constitutional provisions, did not control the decision in that former case. In Simmons v. Lightfoot, supra, it was also said:

"We are of the opinion that a road district formed after a drainage district may embrace such district, and may create a debt *not to exceed one-fourth of the assessed value of the real property in such subsequently formed district, less the debt created by the previously formed district.*"    (Italics mine.)

And that italicized *practical rule* was permitted to actually control that decision; the logical and immediate result being that this court there ordered the Attorney General to approve certain road bonds of such great aggregate amount that the share or portion thereof for which the territory common to both districts would become charged, proportionately, would, when added to the amount of said drainage bonds then outstanding, make up a total bonded indebtedness proportionately chargeable· against that common

territory largely in excess of one-fourth of the assessed valuation of real property within that common territory; and that, in my opinion, was in plain and direct contravention of said restrictive provisions of section 52, as construed and practically applied to the facts of the case at bar, in said opinion by Chief Justice Brown, and as likewise construed, in *abstract terms*, but *not applied*, in said opinion in the Simmons Case.

It is significant, perhaps, that in immediate connection with the enunciation of said practical rule in the Simmons Case the court added:

"But in levying and collecting the taxes to pay the interest on and provide a sinking fund for the payment of such debt, the property in the previously formed district *cannot be taxed more than sufficient to pay the amount in excess of the debt the drainage district was authorized to incur.*" (Italics mine.)

That proposition appears to have been there advanced as *a predicate for said practical rule*, and I think such predicate was indispensable to, as well as insufficient for, its support; yet the proposition itself seems to me to be absolutely repugnant to section 1 of article 8 of the Constitution of Texas, which declares that "taxation shall be equal and uniform." Those provisions of section 1 apply to each and every district within the purview of said section 52, including drainage districts and road districts. Austin v. Gas Co., 69 Tex. 180, 7 S. W. 200; Norris v. Waco, 57 Tex. 641; Mills County v. Brown County, 85 Tex. 393, 20 S. W. 81; Railway v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681. Said provisions are not mentioned in that opinion in the Simmons Case, and appear to have been entirely overlooked. And, in logical and ultimate effect, that enunciation of said proposition in that former case directed the assessment and collection of road bond taxes in that road district upon a basis which might result in a road bond tax rate within the territory common to both districts *lower* than the road bond tax rate applicable throughout the other portion of that road district, in contravention of said section 1 of article 8. That would be the inevitable result upon the basis of the assessed valuation of real property within the two districts, respectively; and that is the only constitutional or statutory basis for determining the extent or amount of such bond issues.

Now, it is upon that practical rule so based upon or reinforced or supplemented by said proposition concerning levy and collection of taxes that relators stand in the case at bar; from which I assume that said practical rule and said proposition were considered by relators as a safe and sufficient guide in preparation and issuance of the road bonds here in controversy. The refusal of respondent to observe and follow that rule in approving bonds evidently precipitated this suit for mandamus. Consequently, said practical rule and said proposition together form the very

warp, at least, of the case at bar, and are so interwoven into its texture that the pending issues between the parties can hardly be fully or satisfactorily decided without consideration of *both phases* or *branches* of said opinion in Simmons v. Lightfoot, supra; and, inasmuch as they are inconsistent, and one or the other is therefore necessarily erroneous, I consider it both appropriate and timely for this court to here and now draw between them a definite line of demarkation, and say plainly, not only that it adheres to the one, but that it expressly overrules the other. Why not?

Consequently, the sole remaining inquiry is: Is there really an irreconcilable conflict between said practical rule and said section 52, properly construed? As illustrative tests of that rule, let it be applied: First, to the facts of an assumed case, in simplest form; second, to the facts of the Simmons Case; and, third, to the facts of the case at bar.

Plat Illustrating Assumed Case.

A, B, C, D=Drainage District.

Assessed valuation real property......$100,000.00

Normal bond capacity (¼).............. 25,000.00
Drainage bonds issued................... 15,000.00

Reserve ·bond capacity...................$ 10,000.00

E, F, G, D=Road District.

Assessed valuation real property......$400,000.00

Normal bond capacity (¼).............$100,000.00
Road bonds issued....................... None

In the assumed case let the road district comprise four sections numbered 1, 2, 3, and 4, respectively, the assessed valuation of real property in each amounting to $100,000, section 4 comprising a previously formed drainage district which has issued drainage bonds amounting to $15,000. The assessed valuation of real property in the entire road district, including the common territory, is, therefore, $400,000, and one-fourth thereof, representing the normal bond issuing capacity of the entire territory within the road district for all or any of the purposes mentioned in said section 52, is $100,000. Applying, now, said practical rule: Deducting from that amount the amount of outstanding drainage bonds, $15,000, previously issued by said drainage district against its territory, which has now become common to both districts, the residue, $85,000, is found to be the maximum amount of road bonds which said

road district may actually issue *according to that rule.*

Now, it must be conceded that, upon the foregoing assumption that the assessed value of real property is uniform throughout the four sections comprising said assumed road district, said issue of $85,000 in road bonds against the entire road district may truthfully be said to amount, *from a merely mathematical standpoint,* to an issue of only $25,000 in road bonds against each of said sections 1, 2, and 3, and of only $10,000 against said section 4, comprising said previously organized drainage district, and that in said drainage district the $10,000 in road bonds, when added to said $15,000 in drainage bonds, would make up for said section 4 a like total of only $25,000 in bonds, and that, *upon that theory* each of the four sections comprising said road district would stand bonded for only $25,000, which would not exceed the restriction imposed by said article 3, § 52, of the Constitution; wherefore the alleged conflict with section 52 vanishes.

But the problem involves more than mathematics. And the entire and only course of reasoning upon which said road bond issue of $85,000 can be considered valid, as not conflicting with said provisions of section 52, rests upon said *assumption* that in estimating the total capacity of the road district to issue road bonds said $85,000 in road bonds may be considered or treated *legally* as distributed among, over, and upon said four sections in manner and in proportions above suggested, and upon the *further assumption* that property within said drainage district is to be taxed for interest and sinking fund *for only $10,000* of said $85,000 issue of road bonds. But both of those indispensable assumptions are, in my opinion, alluringly yet certainly and utterly fallacious; nevertheless they seem to have entered into and to have materially affected and to have even controlled the actual disposition of the case in Simmons v. Lightfoot, and I think they probably explain the genesis of said practical rule therein formulated for ascertaining what amount of valid bonds may be issued.

To indulge said first assumption, to consider or treat such road bond issue of $85,000 as so distributed to, over, or against said sections 1, 2, 3, and 4, *not in proportion to assessed valuation of real property* (which in the assumed instance would mean equally), but arbitrarily, in manner and form hereinabove shown, making the portion thereof chargeable against each of sections 1, 2, and 3 two and one-half times as great as the portion chargeable against section 4, although the assessed valuation of real property is the same in each section, is, I think, to disregard the plain intent and meaning of said section 52 and of said road district statute; and to undertake to justify that procedure by making the road bond tax rate within the common territory *less than that required in the other portion of the road district* is, I think,

to lose sight of and ignore said simple, yet searching, constitutional provision that "taxation shall be equal and uniform."

Our Constitution and statutes and natural justice are such that, if the validity of said $85,000 road bond issue be once assumed or granted, each of said sections must thenceforth be considered and treated as charged with its proportional one-fourth thereof, or $21,250; and that sum, when added to the amount of said outstanding drainage bonds, would run the total amount of such bonded indebtedness so chargeable against said common territory up to $36,250, which is $11,250 in excess of its said constitutional limit. And, inasmuch as different portions of the same road district cannot be subjected to unequal burdens of such bonded indebtedness created for the common benefit of the entire road district, said $85,000 bond issue, as a whole, is excessive to the extent of four times the amount of such excess against section 4, or $45,000. Yet, if said practical rule of the Simmons Case were correct, it would become the duty of the Attorney General, upon proper request, to approve said entire $85,000 issue of road bonds.

For purposes `of test and illustration of said rule it is pertinent to inquire: What amount of valid road bonds may such assumed road district really issue? Without presuming to lay down herein a general rule upon the subject, and limiting my remarks strictly to the purposes of such test, I think that, with propriety, I may venture to say: A chain is no stronger than its weakest link. A battleship squadron is no faster than its slowest unit. Water will not rise above its level without pressure. Likewise the maximum bond issuing capacity of the assumed road district is that amount which bears to one-fourth of the assessed valuation of its real property the same relation or proportion which the reserve and unexercised bond issuing capacity of the common territory, under said section 52, bears to one-fourth of the assessed valuation of the real property within such common territory. Evidently, no such relation or proportion exists in the assumed case between an amount representing one-fourth of the assessed valuation of the real property within said road district and the amount of outstanding drainage bonds previously issued by the drainage district against its own territory—the criterion embodied in said practical rule of the Simmons Case. If those two relations or proportions were found to be identical in any instance, their coexistence would be purely accidental. They were not coexistent in the Simmons Case.

Now, the maximum total capacity of the common territory comprising said drainage district in the assumed case to issue bonds authorized by section 52 is limited to one-fourth of the assessed valuation of its real property, or $25,000. Const. Tex. art. 3, § 52; Simmons v. Lightfoot, supra; also orig-

inal opinion herein by Chief Justice Brown. Consequently, inasmuch as said drainage district has already issued, and there are outstanding against said common territory drainage bonds amounting to $15,000, the reserve and unexercised total bond issuing capacity of said common territory, for purposes authorized by said section 52, is only $10,000, which is found to be 40 per cent. of one-fourth of the assessed valuation of real property within said common territory. And this maximum rate per cent., representing, as it does, the entire reserve bond issuing capacity of said common territory under said section 52, becomes and is the real measure of the maximum proportionate capacity of the other portion of said road district and, thus, in ultimate effect, of the entire road district, to issue road bonds. In other words, the capacity of the assumed road district to issue road bonds is measured, upon that percentage basis, by the total reserve capacity of said common territory to issue bonds of the classes designated by section 52, and not by the difference between the amount of such bonds previously issued against said common territory and an amount representing one-fourth of the assessed value of real property within the road district. The common territory cannot be so subjected to additional bonded indebtedness of that character exceeding, in the aggregate, an amount which, when added to its outstanding aggregate bonded indebtedness of that character, will exceed an amount equal to one-fourth of the assessed valuation of real property within said common territory; that is to say, if the drainage district had previously issued, and there had then been outstanding against said common territory the full quota of bonds permitted by section 52, the assumed road district could not legally issue a dime's worth of road bonds. Stated briefly, such rate as will complete the maximum bond issue possible in the drainage district becomes the maximum rate possible throughout the entire road district; a single rate must prevail throughout the entire road district. Article 8, § 1. And, in practical application to the facts of the assumed case, said road district therein cannot issue road bonds in an amount exceeding 40 per cent of one-fourth of the assessed valuation of its real property, or 40 per cent. of $100,000, which amounts to $40,000. Up to that amount the road district may issue road bonds without infringing upon either section 52 of article 3 or section 1 of article 8 of our Constitution; but beyond that amount it may not go, *in issuing road bonds*, without conflict with said section 52, or, having made such excessive issue, it cannot *levy and collect sufficient taxes* to retire such entire excessive issue without conflict with said section 1 of article 8.

Passing to the facts of Simmons v. Lightfoot, supra, and using the figures therein given, the situation there is found to have been substantially as follows:

Plat Illustrating Simmons v. Lightfoot, 105 Tex. 212, 146 S. W. 871.

```
E            A                                    D
              |   Drainage District.
              |   Valuation ......$409,925.00
              |   Normal bond ca-
              |      pacity ........ 102,481.25
              |   Bonds issued.... 85,000.00
              |   Reserve capac-
              |      ity ........... 17,481.25
              B                                    C

   Assessed value real property..$1,420,015.00
   Normal bond capacity......... 355,003.00
   Bonds issued.................. None.

F                                                 G
```

Drainage District=A, B, C, D.

   Assessed valuation, real property......$409,925.00
   Normal bond capacity (¼).............. 102,481.00
   Drainage bonds previously issued...... 85,000.00
   Reserve bond capacity.................. 17,481.00

Road District=E, F, G, D.

   Assessed valuation, real property.....$1,420,015.00
   Normal bond capacity (¼)............. 355,003.00
   Road bonds issued......................None.

Applying, now, said practical rule of the Simmons Case: Deducting from one-fourth of the assessed valuation of the real property within said road district, $355,003, the amount of said drainage bonds, $85,000, the remainder is $270,003, and that, according to said rule, represents the amount of road bonds which said road district may legally issue. That is precisely what this court there found *in figures*, and held to be approximately correct, upon the facts of that record. But it was there held also, in effect, that land in the drainage district may be taxed for the drainage bonds upon only $102,481—$85,000, or $14,481. Those figures faithfully reflect the facts of that case, and the calculation is mathematically correct substantially as there stated; the trouble lies in the rule which was there applied. Accordingly, as the bonds there tendered for approval amounted to only $100,000, the court ordered the Attorney General to approve them. However, it will be noted that the outstanding $85,000 in drainage bonds previously issued by the drainage district amounted to a little over 20.7 per cent. of the assessed value of real property within the drainage district, and that said issue of $100,000 in road bonds by said road district amounted to a little over 7.04 per cent. of the assessed valuation of real property in said entire road district, *including the drainage district*. Consequently, said drainage bonds and the portion of said $100,000 in road bonds *proportionately and uniformly* chargeable to said common territory together amounted to a little over 27.74 per cent. of the assessed valuation of real property situate in such common territory, or more than 2.74 per cent. in excess of the constitutional limit of one-fourth of the assessed valuation of real property situate in said common territory.

It will also be observed that, under the view announced in that case regarding as-

sessment and collection of taxes, that common territory comprising that drainage district is to be taxed in an amount sufficient to pay only a little more than 6.4 per cent. of said $100,000 in road bonds, although the assessed value of its real property is a little more than 28.8 per cent. of the assessed valuation of real property in that entire road district—a glaring inequality in taxation which, as hereinabove shown, is denounced by said section 1 of article 8 of the Constitution. Whether that ratio of un-uniformity would be substantially changed by the fact that personal property also is taxed does not appear, inasmuch as the valuation of the personal property in either the drainage district or the road district is not shown by the opinion or by the record in the Simmons Case. However, if it were so changed, it would, I think, be wholly immaterial *in principle*, since such change might happen to alleviate the situation, in one instance, by tending to render taxation uniform throughout the drainage district, but, in another instance, it might aggravate the evil by rendering taxation throughout the common territory still less uniform. Mention of that feature is made here because it is presented by relators in the case at bar./

If applied to the facts of the Simmons Case, the method which I have hereinabove suggested for determining the amount of road bonds which might legally be issued by the road district in the assumed case would result in the conclusion that the maximum amount of road bonds which the road district in the Simmons Case was entitled to issue was approximately, $60,350.65. In other words, the reserve bond issuing capacity of that drainage district was approximately $17,481.25, which was a little over 17 per cent. of the total bond issuing capacity of that common territory under section 52, and that same proportion of $409,925, which was one-fourth of the assessed valuation of real property situate within said road district, or $60,350.65 approximately, represents the maximum amount of road bonds which that road district might equally issue. Consequently, my conclusion is that in the Simmons Case the amount of said road bonds there tendered for approval, $100,000, was excessive to the extent of $39,649.35 approximately, and the declination of the Attorney General to approve them in that amount as tendered was proper, and the writ of mandamus there granted should have been denied. The full gravity of that decision does not appear until it is remembered that said $100,000 in road bonds, which the Attorney General was there directed to approve, formed only a relatively small share of the $270,003, approximately, in road bonds which that opinion expressly declared that road district then had constitutional and statutory capacity to issue, under the facts of that case.

It is plain, I think, that the operative portions of said decision in the Simmons Case,

including the grant of the writ of mandamus, are flatly contradictory of the italicized portion of the following excerpt from the opinion in that case:

"While it is true we have held, as herein stated, that two or more districts for different purposes may embrace the same territory and remain separate and distinct units' or entities, yet from this it does not result that the real property the subject of taxation is distinct in such districts so formed. The taxable property remains the same while administered over by separate and distinct entities, and *their joint authority to create a debt against this property is limited by the Constitution to the aggregate amount of one-fourth of the assessed value of such property*. This seems to us to be the plain and undoubted language of the section of the Constitution under consideration." (Italics mine.)

The reference therein was to said section 52 of article 3.

Turning for final test to the facts of the case at bar, in which the road district embraces a part of each of two previously formed drainage districts, each drainage district having already issued drainage bonds, they are found to be substantially as below stated:

A, B, C, D=Drainage District No. 5.
    Assessed real property valuation.....$1,250,031.60

    Normal bond capacity................ 312,507.90
    Drainage bonds issued............... 275,000.00

    Reserve bond capacity...............$ 37,507.00
B, E, F, G=Drainage District No. 8.
    Assessed real property valuation.....$ 599,188.50

    Normal bond capacity................ 149,797.12
    Drainage bonds issued............... 127,000.00

    Reserve bond capacity...............$ 22,797.12
H, I, J, K=Road District.
    Assessed real property valuation.....$ 757,106.70

    Normal bond capacity................ 186,776.67
    Road bonds issued................... 000,000.00

    Reserve bond capacity...............$ 186,776.67

Applying said practical rule of the Simmons Case as I understand its application to the facts of this case, the calculation stands thus: From one-fourth of the assessed valuation of real property within the road district, $186,776.67, deduct the aggregate amount of bonds previously issued by the drainage districts, respectively, $275,000 plus $127,000=$402,000. But that is impossible;

the subtrahend being larger than the minuend. So the attempted calculation ends; and said rule fails here.

But, reverting to and applying here the method hereinabove suggested for ascertaining the amount of bonds which the assumed road district may issue, it is found:

(a) That outstanding drainage bonds previously issued by drainage district No. 5 aggregate approximately 22 per cent. of the assessed valuation of its real property, and outstanding drainage bonds previously issued by drainage district No. 8 aggregate a little less than 21.2 per cent. of the assessed valuation of its real property.

(b) That, consequently, the present reserve capacity of the territory within drainage district No. 8 to issue bonds authorized by said section 52 is *less, proportionately,* than that of any other portion of said road district; wherefore it becomes, by force of said constitutional provisions, the true measure of the present capacity of said entire road district to issue road bonds.

(c) That said reserve capacity of drainage district No. 8 is $22,797.12, which is .1521 per cent. of one-fourth of the assessed valuation of real property within said drainage district No. 8 ($149,797.12); consequently .1521 per cent. of $186,776.67, which is one-fourth of the assessed valuation of real property within said road district, or $28,408.73, represents approximately the actual present maximum power or capacity of said road district to issue road bonds. But it would not have been proper for respondent to have approved, as a whole, that entire issue of $50,000 in road bonds.

I concur in the order overruling said motion.

The foregoing is filed as merely an expression of my own individual views.