## J. B. Simmons et al. v. J. P. Lightfoot, Attorney-General.

No. 2394.   Decided May 8, 1912.

### 1.—Constitution—Taxation—District Bonds—Drainage—Public Roads.

Under article 3, section 52, of the Constitution, as amended in 1904, a political subdivision or defined district authorized to issue bonds and levy taxes for one of the purposes there enumerated (such as public roads under Act of April 8, 1904, Laws, 31st Leg., p. 271) may be created so as to embrace all or a part of a district previously created and given like authority for a different purpose (such as drainage under Acts of March 23, 1907, Laws, 30th Leg., p. 78, and Act of Feb. 19, 1909, Laws, 31st Leg., p. 23); and this although the district first created had already issued bonds for its purposes under the powers conferred on it. Each of such subdivisions could exercise the power to issue bonds and levy taxes, independent of the action of the other, but subject to the limitation as to the total indebtedness permitted, imposed by such article of the Constitution. The district last created took such powers subject to the conditions imposed by the constitutional restriction and the bonded indebtedness previously created by the other. (Pp. 212-217.)

### 2.—Same—Amount of Indebtedness.

The joint authority of two districts, acting as distinct entities, to create indebtedness against the same property which is embraced in each is limited by the Constitution (art. 3, sec. 52) to one-fourth of the assessed value of the property. They can not each create a debt to that amount, and the statutes authorizing each to do so are not invalid as contravening the Constitution, but are subject to the limitation it imposes as to the total debt permitted. The district first acting is subject only to the constitutional limitation on the power. The second also to the conditions imposed by the action of the first. (Pp. 215-217.)

### 3.—Same.

A road district may embrace the territory of a drainage district previously formed, and may create a debt not exceeding in its amount one-fourth the assessed value of the real property embraced, less the amount of indebtedness previously created by the drainage district. The property of the latter district can not be taxed more than suffices to pay the total debt authorized to be created against it. (Pp. 215, 217.)

### 4.—Same—Approval of Bonds—Attorney-General—Mandamus.

Bonds presented for approval to the Attorney-General by a road district which embraced in its limits a previously created drainage district which had also issued bonds, should have been approved where the indebtedness jointly created thereby against the territory of the drainage district did not exceed the constitutional limit, and such approval by the Attorney-General could be enforced by the Supreme Court by writ of mandamus. (P. 217.)

Original application to the Supreme Court by Simmons and others for writ of mandamus against Lightfoot as Attorney-General.

*C. F. Stevens* and *E. B. Pickett,* for relators.

*Jewell P. Lightfoot,* Attorney-General, and *O. C. Funderburk* and *Seb. Coldwell,* for respondent.

Mr. Justice Dibrell delivered the opinion of the court.

This is a proceeding on the relation of the county judge and county commissioners of Liberty County, composing the Commissioners'

Court of that county, against the Attorney-General of the State to require him to give statutory certificate of approval to certain bonds for $100,000.00 authorized to be issued by said Commissioners' Court on November 15, 1911, as road bonds of Road District No. 4 of Liberty County. Previous to the authorization of such bonds, Road District No. 4 had been properly created and established by the Commissioners' Court of said county, and the qualified electors of such road district at an election for that purpose had voted to issue bonds in the sum of $275,000.00, and to levy and collect a tax to pay the interest upon such bonds and provide a sinking fund for their redemption. The creation of this road district, the issuance of the bonds and the levy of the tax for the payment of interest and to create a sinking fund were all done pursuant to and in compliance with the provisions of Chapter 7 of the Acts of the 31st Legislature, page 271, 1909. In forming Road District No. 4, the entire area of a drainage district previously formed under the provisions of Chapter 40, Acts of the Regular Session of the 30th Legislature, as amended by the Act of the Regular Session of the 31st Legislature, was embraced within the limits of said Road District No. 4. The drainage district had issued bonds in the sum of $85,000.00 which had received the approval of the Attorney-General's department. The assessed value of the real estate within the drainage district, which is called Old River Drainage District of Liberty County, Texas, No. 1, is shown to be $409,925.00, and that of Road District No. 4 including the assessed value of the real estate in the drainage district is shown to be $1,420,015.00

The several acts of the Legislature made pursuant to Section 52, Article 3, of the Constitution, as amended in 1904, authorized the formation of districts with power to issue bonds to pay for improvements for five distinct purposes, viz: Navigation, Irrigation, Levees, Drainage, and Public Roads. Each of these several acts authorizes the issuance of bonds in any amount not to exceed $\frac{1}{4}$ of the assessed valuation of the real property of such district.

The case presented in this court involves primarily a construction of Section 52, Article 3, of the Constitution, and incidentally the two legislative acts authorizing the issuance of bonds by the drainage and public road districts.

The section of the Constitution to be construed is as follows:

''Sec. 52. The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company; provided, however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district now or hereafter to be described and defined within the State of Texas, and which may or may not include towns, villages or municipal corporations, upon a vote of two-thirds majority of the resident property tax payers voting thereon who are qualified electors of such district or territory to be effected thereby, in addition to all other

debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limit imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to-wit:

"(a)    The improvement of rivers, creeks, and streams to prevent overflows, and to permit of navigation thereof, or irrigation therefrom, or in aid of such purposes.

"(b)    The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purpose of irrigation, drainage or navigation, or in aid thereof.

"(c)    The construction, maintenance and operation of macadamized, graveled or paved roads and turn-pikes, or in aid thereof."

On the part of relators it is contended that a road district formed subsequent to a drainage district may embrace a part or all of such drainage district, and that as thus formed such road district constitutes a unit or entity independent of the drainage district, with full power to issue bonds in any amount not to exceed one-fourth of the assessed valuation of the real property of such road district.

On the part of respondent the authority of any road district to embrace the whole or any portion of a previously formed drainage district, is denied; and that the power to issue bonds by the Commissioners' Court for the benefit of such road district is limited to an amount not to exceed one-fourth of the assessed valuation of the real property of such district without reckoning the value of the real property situated within the limits of the previously formed drainage district.

As previously stated, Section 52, of Article 3, of the Constitution authorizes the formation of defined districts in this State with power to issue bonds or otherwise lend their credit in any amount not to exceed one-fourth of the assessed value of the real property of such district or territory, for five distinct and independent purposes. The object of the amendment to the Constitution was to broaden the former restrictive powers of the Legislature to authorize counties, cities, towns, or other political corporations or subdivisions of the State, to lend their credit or grant public money in aid of, or to any individual, association or corporation, by authorizing the formation of districts composed of counties, or any number of adjoining countries, or by any political subdivision of the State, or defined territory, by a vote of a two-thirds majority of the resident property tax payers voting thereon who are qualified electors of such district or territory, and to issue bonds or otherwise lend the credit of such district or territory and to levy and collect such taxes to pay the interest thereon and create a sinking fund for the redemption of such bonds, for the purpose of promoting the development of the State.

No good reason presents itself to us why the formation of one

district for the purpose of promoting one of the five enterprises sanctioned by the Constitution and laws of the State should preclude the formation of another district for a different purpose sanctioned by the same authority, embracing a portion or all of such antecedent district. A defined district in need of drainage might equally be in need of good roads, and the same exigency might be urged in relation to each of the purposes for which such districts may be formed. To hold that the formation of one district for a single purpose would deny the use of any part of such district for any other purpose would deny effectiveness to the Constitution and the legislative acts pursuant thereto.

One district may embrace a part or the whole of another, or be so formed as to adopt the exact territory with the same metes and bounds and, being for a different purpose, is a distinct unit or entity, with power to exercise the functions of its creation. Allman v. Tomsdan et al. Drainage Comrs., 55 Ill. App., 21; People Ex Rel. Robert T. Miller, 132 Ill., 427.

We see this illustrated on every hand and wherever we turn. An independent school district may embrace a city or town with the same boundaries, but for purposes different from the city or town and with different administrative officers. Thus formed it may by a vote of the people levy and collect a tax for maintenance or other purposes, and as a separate and distinct unit move in the same orbit with the city or town. The county government with its extended limits embraces the city government with its more contracted bounds, and the two entities distinct and separate move one within the other without impairment to either.

The question of the quantum of the indebtedness that may be created by any separate and distinct district and the consequent amount of taxes that may be levied and collected is one of grave import. The language of the Constitution is such that we may not greatly profit by the application of rules of construction arbitrarily formed, for the reason that no such rules of which we have any knowledge would prompt the ruling that section 52 of article 3 authorizes the creation of a bonded indebtedness of more than one-fourth of the assessed valuation of the real property of such district. While it is true we have held as herein stated that two or more districts for different purposes may embrace the same territory and remain separate and distinct units or entities, yet from this it does not result that the real property the subject of taxation is distinct in such districts so formed. The taxable property remains the same while administered over by separate and distinct entities, and their joint authority to create a debt against this property is limited by the Constitution to the aggregate amount of one-fourth of the assessed value of such property. This seems to us to be the plain and undoubted language of the section of the Constitution under consideration. To give the section a different construction might lead to injurious results and such as we feel sure were never contemplated by those who proposed the amendment to the Constitution by legislative resolution, or who adopted it by the exercise of the ballot's sovereignty.

Under the construction contended for by relators it would be possible for five districts embracing the same territory and formed for different purposes to create an indebtedness against the real property of such districts one-fourth greater than the assessed value of such real property. To illustrate the consequences of such a construction, where the assessed value of the real property in a defined district is $1,000,000.00, and this territory is covered by five districts' for the five different purposes for which the Constitution authorizes the creation of a bonded indebtedness, the result would be a debt of $1,250,000.00. Added to this amount of bonded indebtedness of such territory the State and county ad valorem tax, and possibly a special school tax, and the taxes thus authorized would amount little short of confiscation of property by the slow but sure process of taxation.

We are therefore of the opinion the Constitution authorizes the creation of an indebtedness of one-fourth of the assessed valuation of the real property of any district or territory for all the purposes enumerated in the Constitution. What we mean to and do hold is, that for all the purposes named in the section of the Constitution an indebtedness of one-fourth the assessed value of real property affected by the formation of any district or districts may be created for all the purposes named and a tax levied and collected to pay the interest thereon and provide a sinking fund for the redemption of such indebtedness. The Constitution having fixed the limit of such taxes at an amount sufficient to pay the interest and create a sinking fund sufficient to pay the principal of an indebtedness the maximum of which is put at one-fourth of the assessed value of the real property to be affected thereby, the Legislature is denied the power to authorize a greater tax.

Whatever may be the consequences of this construction placed upon the Constitution to check or thwart public improvement, we can only answer that our duty as a court is to construe the language of that instrument in its ordinary sense and clear import. If it was the design and purpose of those who framed the section of the Constitution to authorize the creation of a debt not to exceed one-fourth of the assessed value of the real property situated in each of such districts for each of the said purposes it should have been so written. Since it has not been so written it is not within the power of this court to interpolate such a meaning. While we recognize the rule of construction that gives effect to the meaning and purpose of a constitutional provision by necessary implication, this is not in our judgment a case where that rule is applicable. To say the Constitution grants the power to levy and collect a tax five times greater than its plain language imports would be an undue exercise or application of the rule of necessary implication.

We do not think the several acts of the Legislature passed in pursuance of section 52 of article 3 of the Constitution, and hereinbefore referred to, are in conflict with that section, for those acts when construed together, as they must be, do not give each district when one embraces a part or the whole area of another district formed for a different purpose, authority to create a debt for each

purpose equal to one-fourth the assessed value of the real property in such district, but rather give the privilege to the first district formed to create a debt and levy and collect the necessary taxes for its discharge in a lesser or greater amount not to exceed the maximum sum fixed by the Constitution. Those acts simply imply that subsequently formed districts for different purposes embracing territory of previously formed districts must accept conditions as they exist, and that districts first formed may first appropriate.

We are of the opinion that a road district formed after a drainage district may embrace such district and may create a debt not to exceed one-fourth of the assessed value of the real property in such subsequently formed district, less the debt created by the previously formed district, but in levying and collecting the taxes to pay the interest on and provide a sinking fund for the payment of such debt, the property in the previously formed district cannot be taxed more than sufficient to pay the amount in excess of the debt the drainage district was authorized to incur. From the facts of the case here presented Road District No. 4 was authorized to issue bonds amounting approximately to \$270,003.00, after deducting the amount of the bond issue of \$85,000.00 by the drainage district, and the taxes authorized to be levied and collected of the property within the drainage district would be approximately \$17,481.00. The estimate here given is only illustrative of the manner in which the bonded indebtedness of the road district should be created and the taxes levied and collected for the purpose of discharging the interest and bonds.

No question is made by the respondent as to the regularity of the bond issue presented for his certificate of approval, and it appearing that said bonds in the sum of \$100,000.00 were issued under authority and by virtue of the order of the Commissioners' Court of Liberty County and were in every respect duly and legally issued in conformity with the Constitution and laws of this State, they should have been approved by the Attorney-General.

In accordance with the views above expressed the writ of mandamus is awarded as prayed for, and it will so issue.