MUNSON et al. v. LOONEY, Atty. Gen.
(No. 2665.)

(Supreme Court of Texas.   Jan. 27, 1915.)

COUNTIES (§ 150*)—POWER TO INCUR DEBT—CONSTITUTIONAL LIMITATIONS — DRAINAGE AND ROADS.

Under Const. art. 3, § 52, limiting the bonded indebtedness of any county or district thereof for drainage and road building to 25 per cent. of the assessed valuation of real estate in the territory affected, and under Rev. St. 1911, art. 2595, passed in accordance with such constitutional provision, while two districts may be formed of the same territory for the two purposes of drainage and road building, or two districts may have part of their territory in common, nevertheless the aggregate indebtedness incurred for drainage and road building in such common territory must not exceed 25 per cent. of the total assessed valuation of its real property.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 165, 166, 215–217; Dec. Dig. § 150.*]

Original petition for mandamus by J. W. Munson and others to compel B. F. Looney, Attorney General, to approve a county bond issue. Writ refused.

Hart & Woodward, of Austin, and C. D. Jessup, of Angleton, for relators. B. F. Looney, Atty. Gen., and W. M. Harris and Luther Nichols, Asst. Attys. Gen., for respondent.

BROWN, C. J. This is a proceeding by the relators against the Attorney General to require him to approve an issue of $50,-000 of bonds made by the county of Brazoria under the following state of facts:

By a proper proceeding under the law of the state, and in accordance with the Constitution of the state, Brazoria county created a road district No. 5, and by a vote of the citizens of the said district provided for the issue of $50,000 of bonds upon the property of the said district. The bonds were issued and presented to the Attorney General for approval, which was declined.

The road district No. 5 included all or a part of drainage districts Nos. 5 and 8 in the said county. The drainage districts had been previously created, and bonds issued to the amount of 22 per cent. of the taxable values of the real estate of drainage district No. 5, and of 21.2 per cent. of the taxable values of the real estate of district No. 8. If the $50,000 in bonds had been approved by the Attorney General, it would have increased the bonded indebtedness of district No. 5 and district No. 8, each, to an amount greater than 25 per cent. of the assessed value of the real estate in each.

As before stated, this is a proceeding in which it is sought to have a mandamus issued to the Attorney General, requiring him to approve said bonds, and the question that is presented here for examination and determination is: Would the approval of the $50,000 in bonds increase the amount of bonds on the two drainage districts, or either of them, to an amount greater than the constitutional limitation? Counsel for both parties have discussed many questions in this case, which, in the opinion of the court, are wholly irrelevant to the real issue, which is, to our minds, very simple. We will first endeavor to strip this case of all of its complications and misleading propositions, so as to make clear and unquestionable the proper course to be pursued in issuing such bonds.

The opinion in the case of Simmons v. Lightfoot, 105 Tex. 212, 146 S. W. 871, seems to be wholly misunderstood and misinterpreted by the attorneys on both sides of this contention. Indeed, from some cause or other, the misunderstanding of that case seems to have caused the only difficulty in this case. We will first outline that which might have been done in compliance with the Constitution.

Article 3, § 52, of our Constitution, denies to the Legislature the power to authorize any city, town, or county, or any subdivision in the state, to lend its credit, etc.—

"provided, however, that under legislative provision any county, * * * upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, * * * and levy and collect such taxes to pay the interest thereon and provide a

sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to-wit: * * * (b) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof. (c) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof. (Declared adopted December 29, 1904.)"

In exercise of the authority granted, the Legislature enacted a statute containing these provisions:

"Art. 2595. Drainage Bonds; Order for Issuance; Amount.—After the establishment of any such drainage district, and after making and filing of such map, profiles and estimates as provided for in section 21 of this act [article 2593], the commissioners' court shall make an order directing the issuance of drainage bonds for such district, sufficient in amount to pay for such proposed improvements together with all necessary, actual and incidental expenses connected therewith: Provided, however, that said bonds shall not exceed in amount one-fourth of the assessed valuation of the real property in such district, as shown by the last annual assessment thereof, made for said drainage district, nor exceeding the amounts specified in said order and notice of election."

Under that law, drainage districts Nos. 5 and 8 in Brazoria county were created. District No. 5 issued bonds to the amount of 22 per cent. of the assessed value of the real estate within its limits. District No. 8 was created in said county, and adjoining No. 5, which issued bonds to the amount of 21.2 per cent. of the assessed value of all real estate within said district. If the bonds now sought by this procedure were issued by either the fifth or the eighth district, it would result in charging upon such district a sum greater than one-fourth of the assessed value of the real estate therein, in violation of the Constitution.

If the bonds presented had been approved by the Attorney General, it would have appropriated to the payment of bonds more than one-fourth of the assessed value of the real estate in each of the districts named, in direct violation of the Constitution of the state. This question was so ably and carefully discussed in Simmons v. Lightfoot, Attorney General, 105 Tex. 212, 146 S. W. 871, that we deem it unnecessary to repeat conclusions reached and expressed in that case further than to quote as follows:

"No good reason presents itself to us why the formation of one district for the purpose of promoting one of the five enterprises sanctioned by the Constitution and laws of the state should preclude the formation of another district for a different purpose sanctioned by the same authority, embracing a portion or all of such antecedent district. A defined district in need of drainage might equally be in need of good roads, and the same exigency might be urged in relation to each of the purposes for which such districts may be formed. To hold that the formation of one district for a single purpose would deny the use of any part of such district for any other purpose would deny effectiveness to the Constitution and the legislative acts pursuant thereto. One district may embrace a part or the whole of another, or be so formed as to adopt the exact territory with the same metes and bounds, and, being for a different purpose, is a distinct unit or entity, with power to exercise the functions of its creation. Allman v. Lumsden et al. Drainage Com'rs, 55 Ill. App. 21; People ex rel. Robert T. Miller v. Scott, 132 Ill. 427 [23 N. E. 1119]. * * * While it is true we have held as herein stated that two or more districts for different purposes may embrace the same territory and remain separate and distinct units or entities, yet from this it does not result that the real property the subject of taxation is distinct in such districts so formed. The taxable property remains the same while administered over by separate and distinct entities, and their joint authority to create a debt against this property is limited by the Constitution to the aggregate amount of one-fourth of the assessed value of such property. This seems to us to be the plain and undoubted language of the section of the Constitution under consideration. To give the section a different construction might lead to injurious results and such as we feel sure were never contemplated by those who proposed the amendment to the Constitution by legislative resolution, or who adopted it by the exercise of the ballot's sovereignty."

That clear and forcible statement of the law which confers the powers to issue such bonds, and the limitation upon its exercise, is so clear, that the writer cannot improve upon it, and we adopt it as quoted herein. The Attorney General properly refused to approve the bonds.

The writ of mandamus is refused.