COLEMAN–FULTON PASTURE CO. et al.
v. ARANSAS COUNTY et al.*

(No. 5624.)

(Court of Civil Appeals of Texas. San Antonio.
Oct. 27, 1915. Rehearing Denied
Dec. 1, 1915.)

1. MUNICIPAL CORPORATIONS ☞863—POWER TO CONTRACT — LIMITATION BY TAXING POWER.

The power of a municipal corporation to contract is limited by its power to tax.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1824–1827; Dec. Dig. ☞863.]

2. COUNTIES ☞153½—POWER OF COUNTY—CONSTITUTION — "ROADS" — "MACADAMIZED" — "GRAVELED" — "PAVED" — "CAUSEWAY."

Const. art. 3, § 52, provided that the Legislature could not authorize any county to lend its credit in aid of any individual or corporation. The section was amended in 1903 to provide that any county, upon a two-thirds majority vote of the resident property taxpayers voting thereon, may issue bonds for the construction and maintenance of "macadamized, graveled or paved roads and turnpikes, or in aid thereof." *Held,* that such provisions did not authorize the construction of a causeway across a bay some 13,000 feet long, 3,000 feet of which, spanning deep water was to be a bridge; the word "roads" not being the equivalent of "roads and bridges," and the words "macadamized," "graveled," and "paved" not being descriptive of bridges, and a "causeway," though coming within the term "road" would not come within the authority conferred, where a part of it constituted a bridge.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 221, 222; Dec. Dig. ☞153½.

For other definitions, see Words and Phrases, First and Second Series, Roads; Macadamize; Gravel; Pave; Causeway.]

Appeal from District Court, Aransas County; F. G. Chambliss, Judge.

Suit by the Coleman-Fulton Pasture Company and others against Aransas County and others, to restrain the County Judge and Commissioners' Court from issuing bonds. From an order refusing a temporary injunction, plaintiffs appeal. Judgment reversed, and cause remanded, with instructions.

See, also, 180 S. W. 316.

Proctor, Vandenberge, Crain & Mitchell, of Victoria, and Templeton, Brooks, Napier & Ogden, of San Antonio, for appellants. E. A. Stevens, of Rockport, and Dougherty & Dougherty, B. D. Tarlton, Jr., and H. S. Bonham, all of Beeville, for appellees.

MOURSUND, J. This is an appeal from an order of the judge of the Thirty-Sixth judicial district refusing a temporary injunction. The suit was brought in the court below to restrain the county judge and commissioners' court of Aransas county from issuing $300,000 of the bonds of Aransas county for the purpose of building what they term a "causeway" across Aransas Bay, between Lamar peninsula and Live Oak peninsula, and from negotiating or selling said bonds, and from applying said bonds or the pro-ceeds thereof to the construction of said structure. The character of structure termed by them a "causeway" is fully set out in the petition, and in the plat or map and the specifications attached as exhibits thereto, and these show that it is a structure about 13,000 feet long, running across the waters of the bay between the points above referred to, and that the water between said points varies from 3 to 13 feet in depth. Specifications of the structure, with a drawing thereof, prepared by an architect employed by the commissioners' court, are made part of the petition. These show that the structure is to consist of the following:

"(1) A hydraulic fill 50 feet wide at the crown to a level of 6 feet above M. H. T., extending from either end of the trestle structure to the mainland terminals.

"(2) A reinforced concrete bridge of the beam and girder type, supported on concrete pile bents, spaced 30 feet apart, spanning the deep water in the bay for a distance of 3,033 feet, including the draw span, and having a clear roadway width of 20 feet.

"(3) A drawbridge, with 20-foot roadway and 50-foot clear span, crossing the channel at its deepest point, in order to provide passageway for boats and comply with the requirements for navigation."

The architects, in further describing the proposed bridge, say:

"Our plans show four piles, 16″x16″ in section, reinforced to act as posts, and driven or jettied down to a safe penetration, requiring lengths varying from 40 to 80 feet each, will be used for each bent. Upon these bents, spaced 30 feet apart, center to center, will be cast monolithically, except for expansion joints, the superstructure of reinforced concrete, as delineated on the several sheets."

The bridge is to be paved with wood blocks. The petition shows that an election has been held and has resulted in favor of the issuance of the bonds by a vote of more than two-thirds of the property tax paying voters of said county, and that the said commissioners' court, unless restrained, will proceed to issue said bonds and incur the necessary expense incident thereto, and will proceed to sell the same and apply the proceeds thereof to the erection of said structure. The petition further shows that the said defendants are attempting to justify their right to issue said bonds under a special act of the Legislature and subdivision (c) of section 52 of article 3 of the Constitution of the state of Texas, which authorizes the issuance of bonds for:

"The construction, maintenance and operation of macadamized, graveled and paved roads and turnpikes, or in aid thereof."

Appellants set up in their petition a number of grounds on which they claim the bonds are illegal, the principal one being that the structure proposed is neither a "macadamized, graveled, or paved road," and that said court has no authority under the Constitution or laws of this state to issue the bonds referred to. The other grounds of invalidity are: (1) That Aransas Bay, over

---

which the structure is proposed to be built, is part of the navigable waters of the United States, and that it is contrary to the statutes and laws of the United States to construct it across said waters without the consent of the Chief of Engineers and Secretary of War of the United States, and that this consent has not been given; (2) that the form of ballot used at the election was illegal, in that it required the voter to vote, not merely for or against the issuance of the bonds, but also on the question of the levy of tax for the interest and sinking fund; (3) that the special act referred to was unconstitutional, because it applies to a particular structure to be erected between the points in that county; and (4) that it was unconstitutional, because it relates to the financial affairs of a particular county for that particular purpose—that is, the issuance of bonds for the building of a particular improvement—and is a matter that should have been governed by the general law.

[1] Article 8, § 9, of the state Constitution, as amended in 1883, prohibited counties from levying a tax of more than 15 cents on the $100 valuation for roads and bridges, except for the payment of debts incurred prior to the adoption of the amendment. In 1890 article 8, § 9, was amended so as to give the Legislature the power to authorize an additional tax, not exceeding 15 cents, to be levied for the further maintenance of public roads, provided the majority of the qualified tax paying voters voted such tax. These provisions absolutely limited the power of the Legislature to permit the levying of taxes by counties for road and bridge purposes. As the power to contract is limited by the power to tax (Gould v. City of Paris, 68 Tex. 516, 4 S. W. 650), it necessarily follows that the Legislature was prohibited from authorizing the issuance of bonds, if the tax necessary for the payment of interest and sinking fund exceeded the constitutional limit.

[2] In 1903 the Constitution was amended by adding an additional grant of power to the Legislature with reference to roads. This grant was not made an amendment to section 9 of article 8, which limited the amount of county taxes, but was made in the form of a proviso to article 3, § 52. That section, prior to such amendment, prohibited the Legislature from authorizing any county to lend its credit or grant public money or thing of value in aid of or to any individual, association, or corporation. Evidently the Legislature considered this prohibition unnecessarily severe, as well as the prohibition with reference to the amount of tax which could be levied for roads, so it submitted an amendment to said article 3, § 52, which was adopted, and that section was made to read as follows:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the state, to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company: Provided, however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district now or hereafter to be described and defined within the state of Texas, and which may or may not include towns, villages or municipal corporations, upon a vote of a two-thirds majority of the resident property tax payers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to wit:

"(a) The improvement of rivers, creeks and streams to prevent overflows, and to permit of navigation thereof, or irrigation thereof, or in aid of such purposes.

"(b) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof.

"(c) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

By the adoption of such amendment an exception was ingrafted upon section 52, art. 3, to the effect that aid could be granted an individual, association, or corporation for certain purposes, among them being "the construction, maintenance, and operation of macadamized, graveled or paved roads, and a further exception was created to the prohibition contained in section 9 of article 8, namely, that for the purpose of the construction, maintenance, and operation of macadamized, graveled, or paved roads the limit of taxation fixed for ordinary purposes would not apply, and taxes for roads of the kinds so excepted could be authorized to the extent necessary to pay bonds in an amount not exceeding one-fourth of the assessed valuation of the real property of the county. These provisions of the Constitution make it plain that the power to issue bonds and to levy a tax for road and bridge purposes is expressly limited, and it cannot be contended that because a structure is called a causeway the prohibition does not apply. The Legislature which passed the act authorizing Aransas county to hold the election expressly referred to section 52, art. 3, of the Constitution, for authority, and used the very words of said section in so far as it relates to roads, with the addition of the words "highway" and "causeway." See chapter 92, Special Laws, 34th Leg. Such power cannot be exercised under section 9 of article 8, for, as is shown by the petition, Aransas county has exhausted its taxing power under that section, and besides the tax ncecessary to pay interest and sinking fund for the pro-

posed bonds would be 80 cents upon the $100 valuation of property, an amount far in excess of the limit fixed in said section 9 of article 8. It therefore becomes necessary to decide whether the words relating to roads in said section 52, art. 3, authorize the issuance of bonds and the levy of a tax for the purpose of the construction of a structure such as is described in plaintiffs' petition.

Appellees contend that the words "or in aid thereof" mean that structures may be erected which would enable travelers to pass from one section of a macadamized, graveled, or paved road to another. There is no merit in the contention. Such words must be construed in connection with that part of section 52 which was amended, and when this is done it is evident that they mean that the county may lend its aid to any person, association, or corporation for the purpose of the construction, maintenance, and operation of macadamized, graveled, or paved roads and turnpikes. Simmons v. Lightfoot, 105 Tex. 212, 146 S. W. 871. This brings us to the real issue in the case, and that is whether the word "roads" was used in said section 52 in such a broad sense as to include a structure such as is described in plaintiff's petition. That structure, to the extent of 3,033 feet, is a bridge; so, in order to uphold the tax and bond issue, it is necessary to decide that the authority to build macadamized, graveled, or paved roads means the authority to build bridges. The words "macadamized," "graveled," and "paved" are very appropriate when applied as descriptive of roads, but are not used in describing bridges, for bridges take their names from the material principally employed in their structure. Therefore the words qualifying and limiting the word "roads" tend to show that such word was not used with the intention of making it include bridges. If the legislative committee which drew the substitute amendment, which passed the Legislature without charge of verbiage, and was adopted by the voters, had intended to authorize the creation of bridges, as well as the construction of roads, it could easily have done so by adding the words "and necessary bridges." This Legislature had before it several provisions of the Constitution, in each of which roads and bridges were separately mentioned. See section 2, art. 11; section 24, art. 16; section 56, art. 3; section 9, art. 8. As a general thing, the same word is supposed to be used in the same sense wherever it occurs in a Constitution. Cooley's Constitutional Limitations (7th Ed.) p. 95. This rule is of little force when a word is used in different meanings; but when, as in our state Constitution, the word "roads" has uniformly been used in a sense which did not include bridges, it seems such fact is one of considerable cogency in determining the meaning of the word "roads" as used in the amendment under consideration.

The same Legislature also passed an act amending article 877, R. S. 1895. See Acts of 1903, 1st Called Session, p. 9. This amendment was for the purpose of providing that bonds could be issued for improving and maintaining the public roads; said article theretofore having only provided for bridge bonds. In amending the article, the Legislature carefully made provision for both bridge and road bonds, and permitted an election for the two purposes as one proposition. This act shows that said Legislature was fully conversant with the fact that roads and bridges had been mentioned separately in our Constitution and statutes, and that when it provided for both purposes it realized the necessity of saying so in plain and apt language.

Many acts of prior Legislatures are cited by both sides in an effort to substantiate their contentions, and while we have read and carefully considered all of the same, it would unduly extend this opinion to discuss to any extent such acts. The word "road" has been often used, and sometimes it has been given a very broad meaning; but invariably, when provision was made for the creation of roads and a necessity existed for bridges, the right to construct same was specially given. In all general statutes and constitutional provisions providing for the creation of roads and bridges, the building of bridges is separately mentioned. In statutes relating to the working of public roads, the word "road" has been given a meaning broad enough to include all of the public highway, including bridges. Some of the provisions examined by us are the following: Articles 6966, 6977, 6959, 6934, 642, 2254, and 2241, R. S. 1911.

Our attention has been called to several acts of succeeding Legislatures dealing with the amendment, from which a construction thereof may be deduced; but in the main these acts have been of a local character, and sometimes different constructions must be deduced from acts of the same Legislature. See Acts 32d Leg. c. 87; Special Laws 33d Leg. Reg. Session, cc. 72, 112, and 154; resolution for amendment of section 52 of article 3, passed by 33d Leg., adding the word "bridges" to subdivision (c), Gammell's Laws, vol. 16, p. 457. Under the rules relating to legislative construction, we consider the acts cited to be of no assistance in determining the issues in this case. It has also been contended that the Attorney General's department has construed section 52 of article 3 in accordance with appellees' views by approving a bond issue to build a "causeway" across Nueces Bay. An investigation of the bond record discloses that said election was for the purpose of determining whether a "causeway or combination bridge and roadway" should be constructed. Nothing was said about "macadamized," "graveled," or "paved" roads, and the bond issue was limited to such an amount that the tax authorized by article 8, section 9, of the Constitution, for the building

of roads and bridges, was not exceeded. In fact, a tax not exceeding 10 cents was voted, and only 7 cents levied. It is apparent that no such question as we have before us was passed upon by the Attorney General's department.

Appellees rely strongly upon the case of Dallas County v. Plowman, 99 Tex. 513, 91 S. W. 221, in which it was held that the amendment to section 9 of article 8 of the Constitution, adopted in 1890, providing for an additional levy of tax for the maintenance of public roads, should not be held to mean that the funds could only be used to repair existing roads, but should be given the broader meaning of authorizing the funds to be used for all purposes necessary to increase the capacity of the county to maintain a system of public roads. The court was construing the word "maintenance," and not the word "roads." It did not hold, and we do not think it will hold, that the word "roads," used in that amendment, means roads and bridges.

It is true, after we have made use of all the lights which the instrument itself affords, if there be doubts to clear up and ambiguities to explain, we may look at the object to be accomplished by the clause in which the ambiguity is met with. That rule cannot be invoked to add to a plain grant of power merely because we think it would have been wise for the grant to have been increased. It is always an easy matter afterwards to see how improvements could have been made in giving a power; but when the power is expressed in plain words it cannot be extended. To charge the Legislature with an intent to provide for the erection of bridges upon such a far-fetched theory, when it could have, and as a body of sensible men would have, added the words "and necessary bridges," imputes to that body unusual foresight in seeing difficulties and extraordinary carelessness in meeting and obviating the same. Surely, if they thought at all about bridges being necessary, and decided to allow the construction thereof, as men of common sense, they would have added the words necessary to make their intention clear.

It is also contended that as the amendment was for the public welfare or convenience, for the construction of works of great public utility, it should be liberally construed, and that therefore the word "roads" should be held to include bridges. To this contention we consider the language of Mr. Justice Dibrell, speaking for the Supreme Court in the case of Simmons v. Lightfoot, 105 Tex. 212, 146 S. W. 873, in discussing this same amendment, furnishes an appropriate answer, viz.:

"Whatever may be the consequences of this construction placed upon the Constitution to check or thwart public improvement, we can only answer that our duty as a court is to construe the language of that instrument in its ordinary sense and clear import. If it was the design and purpose of those who framed the section of the Constitution to authorize the creation of a debt not to exceed one-fourth of the assessed value of the real property situated in each of such districts for each of the said purposes, it should have been so written. Since it has not been so written, it is not within the power of this court to interpolate such a meaning."

We conclude that the words "macadamized, graveled or paved roads," used in the amendment under consideration, cannot be construed to have been used with the intention of their being the equivalent of the words "roads and bridges." If the amendment be held to mean bridges, the Legislature which passed the laws putting it into effect, and used the same language (see articles 627 and 628, R. S. 1911), would be held to intend the same meaning, and the order for the election could be drawn in the same general way. After the election at which the taxpayers had voted their views on a proposition reading "for the construction of macadamized, paved, or graveled roads," the authorities could use the funds to build a bridge. Surely the Legislature which framed the amendment did not intend to make possible such an imposition upon the people. In this case the people of Aransas county knew exactly what they were voting on; but the fact that abuse could be made of the power, if given as contended for by appellees, is a circumstance to be considered in arriving at the intention of the framers of the amendment.

Appellees contend further that, if the word "roads" is held not to include a bridge, then the power given to build a road by implication carries the power to build bridges. They say that, as the amendment provided for the construction of roads in "any definite district now or hereafter to be described and defined within the state," it by necessary implication gave the right to erect bridges, because, if not, then there is no provision of law which authorizes a tax levy to build bridges in such district, and therefore the road would be useless. It occurs to us that this theory is rather far-fetched. There is no law which would prohibit the counties from erecting bridges, although used as a part of a macadamized road running through a defined district made up of several counties or portions of counties. Such a road would be a great help to each county through which it ran, and surely the Legislature would not take it for granted that the commissioners' courts of such counties would necessarily refuse to build bridges. It is true, if a turnpike was being built by private capital, the commissioners' court would refuse to build bridges; but the Legislature might well have considered that, if the taxing district aided the private enterprise to construct the road, such enterprise might well afford to build bridges itself—the presumption being that it had some capital.

Again, there are many counties in the state in which there are no bridges over streams of considerable magnitude which

are crossed by public roads, and it may not have occurred to the Legislature to provide for bridges as well as roads. There is no merit in the contention that a road without bridges over the streams would be worthless, and therefore the power to build bridges must by necessary implication accompany the power to build roads. There was a time when we had roads all over this state and did not find them useless, although the streams had to be forded, and in many portions of the state those conditions still exist. The macadamized, graveled, and paved roads would be a valuable asset without bridges, and, while bridges would add greatly to the value of the roads, it must be remembered that we cannot add to a grant of authority further authority, because it would make the grant more valuable, but can only imply the giving of such rights as will be necessary to make the grant effectual. "The implication under this rule must be a necessary, not a conjectural or argumentative, one." Cooley on Constitutional Limitations (7th Ed.) p. 98. The Constitution cannot be extended to meet particular cases in which, owing to unforeseen difficulties, the grant of power may not be of much value.

The petition shows that no macadamized, graveled, or paved road or causeway can be built across Aransas Bay without erecting a bridge 3,033 feet long, and that the election was called for the particular purpose of building a structure of that kind across said bay. This being the case, it clearly appears that the election was held for a purpose not authorized by law, and that the proposed bonds will be invalid, and the issuance thereof should be enjoined. A causeway, as defined by Webster, would undoubtedly be a part of a road, within the meaning of the Constitution; but a causeway such as is designed to be built in this case is, to the extent of 3,033 feet, a bridge.

The judgment of the trial court is reversed, and the cause remanded, with instructions to issue a temporary injunction, enjoining the issuance of the bonds as prayed for.