

# THE ATTORNEY GENERAL
# OF TEXAS

October 23, 1986

JIM MATTOX
ATTORNEY GENERAL

Honorable David H. Cain                    Opinion No.  JM-568
Chairman
Committee on Transportation                Re: Construction of subsection (c)
Texas House of Representatives             of article III, section 52, of the
P. O. Box 2910                             Texas  Constitution  relating  to
Austin, Texas    78769                     county road bonds

Dear Representative Cain:

As chairman of the Committee on Transportation for the Texas
House of Representatives you have requested the opinion of this office
on two questions:

> 1. Does the existence of outstanding road
> bonds of a county issued under article III,
> section 52(c), of the Texas Constitution limit or
> otherwise affect the amount of bonds that a county
> road district located in that county may issue
> under article III, section 52(b), of the Texas
> Constitution?

> 2. Does the existence of outstanding bonds of
> a county road district issued under article III,
> section 52(b), of the Texas Constitution limit or
> otherwise affect the amount of road bonds that the
> county in which such road district is located may
> issue under article III, section 52(c), of the
> Texas Constitution?

Section 52 of article III of the Texas Constitution has been
amended three times since its adoption in 1876:  in 1904, 1970, and
1978.  Acts 1903, 28th Leg., R.S., §2, at 247; Acts 1969, 61st Leg.,
R.S., §1, at 3236; Acts 1977, 65th Leg., R.S., §1, at 3374.  It now
reads:

> Sec. 52.  (a)  Except as otherwise provided by
> this section, the Legislature shall have no power
> to authorize any county, city, town or other
> political corporation or subdivision of the State
> to lend its credit or to grant public money or
> thing of value in aid of, or to any individual,
> association or corporation whatsoever, or to

become a stockholder in such corporation, association or company.

(b)  Under Legislative provision, any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the State, or any defined district now or hereafter to be described and defined within the State of Texas, and which may or may not include, towns, villages or municipal corporations, upon a vote of two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of the Constitution, and levy and collect taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes to wit:

(1)  The improvement of rivers, creeks, and streams to prevent overflows, and to permit of navigation thereof, or irrigation thereof, or in aid of such purposes.

(2)  The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof.

(3)  The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof.

(c)  Notwithstanding the provisions of Subsection (b) of this Section, bonds may be issued by any county in an amount not to exceed one-fourth of the assessed valuation of the real property in the county, for the construction, maintenance, and operation of macadamized, graveled, or paved roads and turnpikes, or in aid thereof, upon a vote of a majority of the resident property taxpayers voting thereon who are qualified electors of the county,

> and without the necessity of further or amendatory legislation. The county may levy and collect taxes to pay the interest on the bonds as it becomes due and to provide a sinking fund for redemption of the bonds.
>
> (d) Any defined district created under this section that is authorized to issue bonds or otherwise lend its credit for the purposes stated in Subdivisions (1) and (2) of Subsection (b) of this section may engage in fire-fighting activities and may issue bonds or otherwise lend its credit for fire-fighting purposes as provided by law and this constitution. (Emphasis added).

Tex. Const. art. III, §52.

Originally, section 52 contained only the unemphasized language set out in subsection (a) above. Later, the substance of subsection (b) was added as a proviso in 1904. In 1970, the existing section was subdivided and the language of subsection (c) was added. Subsection (d) was added in 1978. [See Historical Note, 1A Vernon's Annotated Constitution of the State of Texas 636 (1984).]

The 1904 subsection (b) provision that counties or districts could, upon a proper vote of the people, "in addition to all other debts" issue bonds "in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory" was an early source of controversy. In 1912, it was construed by the Texas Supreme Court in Simmons v. Lightfoot, 146 S.W. 871 (Tex. 1912), to mean that the joint and separate authority of the governmental units named by article III, section 52 to create debts against taxable property they embrace jointly "is limited by the Constitution to the aggregate amount of one-fourth of the assessed value of such property." 146 S.W. at 873. (Emphasis added).

Thus, according to the Simmons case, if either the county or a road district, for example, has issued bonds in an amount equalling one-fourth of the assessed value of the taxable property in the road district, neither the county or the road district (nor any other debt-creating district) can issue bonds under article III, section 52 encumbering that property until a portion of the bonding capacity of the property has been restored by the retirement of outstanding obligations.

Noting that the creation of different districts for five distinct purposes was possible under article III, section 52, the Simmons court said:

> Under the construction contended for by re-
> lators, it would be possible for five districts
> embracing the same territory and formed for
> different purposes to create an indebtedness
> against the real property of such districts
> one-fourth greater than the assessed value of such
> real property.
>
> . . . .
>
> If it was the design and purpose of those who
> framed the section of the Constitution to
> authorize the creation of a debt not to exceed
> one-fourth of the assessed value of the real
> property situated in each of such districts for
> each of the said purposes, it should have been so
> written. Since it has not been so written, it is
> not within the power of this court to interpolate
> such a meaning.

146 S.W. at 873. See also San Antonio & A. P. Railway Co. v. State, 95 S.W.2d 680 (Tex. 1936); Munson v. Looney, 172 S.W. 1102 (Tex. 1915); Attorney General Opinion O-486 (1939). Cf. Collingsworth County v. Allred, 40 S.W.2d 13 (Tex. 1931); Henderson County v. Allred, 40 S.W.2d 17 (Tex. 1931). That is where the law stood at the time subsection (c) was added to article III, section 52 in 1970.

Subsection (c) begins, "Notwithstanding the provisions of sub-section (b) of this section, bonds may be issued. . . ." (Emphasis added). A brief submitted with your request suggests this language allows counties to disregard the "one-fourth of the assessed value" limitation of subsection (b) and to encumber property in the county for an additional road bond debt in the amount of one-fourth of the assessed value of the property. In other words, the brief argues that property in a county can now be encumbered for article III, section 52 purposes in the aggregate amount of one-half of its assessed value [one-fourth under subsection (b), and one-fourth under subsection (c)].

We do not believe the addition of subsection (c) was intended to have that effect. In our opinion, subsection (c) was added to the constitution merely to remove the requirement that county road bonds secure the approval of two-thirds of the electorate rather than of a simple majority.

The 1970 amendment was proposed by House Joint Resolution No. 28 in the Sixty-first Legislature, which carried the following caption:

> Proposing an amendment to section 52, article III,
> Constitution of the State of Texas, to authorize

> any county, on the vote of a majority of qualified property taxpaying electors, to issue road bonds in an amount not to exceed one-fourth of the assessed valuation of the real property in the county.

The resolution dictated that the proposition be presented on the ballot as a vote for or against:

> The constitutional amendment authorizing any county, on the vote of a majority of its qualified property taxpaying electors, to issue road bonds in an amount not to exceed one-fourth of the assessed valuation of the real property in the county.

Acts 1969, 61st Leg., R.S., at 3236.

One commentator has professed uncertainty about the meaning of subsection (c), as added in 1970.  See 1 Braden, The Constitution of the State of Texas:   An Annotated and Comparative Analysis,  260 (1977).  But others have expressed no doubt:

> Article III, section 52 of the constitution was last amended as the result of an election held in November 1970.  Again we have an illustration of our propensity to attack problems on the fringe without going to the basic problem.  As the result of an election held in 1968, Dallas County had been given authority to issue bonds for road purposes upon a majority vote (rather than two-thirds vote) of the resident qualified property taxpaying electors, and this power was given to all counties by the 1970 amendment to article III, section 52.  The amendment to article III, section 52 provides no other change. . . .

Morrow, Financing of Capital Improvements by Texas Counties and Cities, 25 SW.L.J. 373, 391, 392 (1971).  Cf. Tex. Const. art. III, §52e.

Texas courts have not yet construed subsection (c). The paramount task is to ascertain the intent of its framers and the people who adopted it.  See 12 Tex. Jur. 3d, Constitutional Law §24 (1981).  Our examination convinces us that no change was contemplated other than a change in the relative size of the vote necessary to authorize the issuance of county road bonds, and that the voters did not intend to increase twofold the potential liability of their property for article III, section 52 debt purposes.  To paraphrase the language of the Texas Supreme Court in Simmons v. Lightfoot, supra, if it was the

design and purpose of those who framed subsection (c) to authorize the creation of an aggregate debt not to exceed <u>one-half</u> of the assessed value of the real property situated in the county, it should have been so written.

In answer to your questions, we advise that the existence of outstanding county road bonds issued under article III, section 52(c), of the Texas Constitution will limit or affect the amount of bonds that a county road district located in that county may issue under article III, section 52(b) thereof. We also advise that the existence of bonds issued by a road district pursuant to section 52(b) will limit or affect the amount of road bonds that a county may issue pursuant to section 52(c).

## S U M M A R Y

The existence of outstanding road bonds of a county issued under subsection (c) of article III, section 52, of the Texas Constitution will limit or affect the amount of bonds that a county road district may issue under subsection (b) thereof, and the existence of bonds issued by a road district pursuant to subsection (b) will limit or affect the amount of road bonds a county may issue pursuant to subsection (c).

Very truly yours,

JIM   MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General